Martínez, Demandante y Apelante, *v.* Trujillo & Mercado, Demandada y Apelada.

## Apelación procedente de la Corte de Distrito de Ponce en pleito sobre daños y perjuicios.

### No. 1372.—Resuelto en julio 6, 1916.

Daños y Perjuicios—Ley Común—Responsabilidad del Principal—Actos del Empleado.—El precepto del artículo 1804 del Código Civil vigente es muy parecido al principio de la ley común relativo a que el principal solamente puede ser responsable por los actos de su empleado dentro de los límites o alcance de su empleo.

Id.—Escopeta—Responsabilidad del Principal—Deber del Empleado—Consecuencia Natural y Probable—Transgresores.—Cuando en una reunión de trabajadores en una finca o hacienda uno de éstos pregunta al guarda o vigilante de ella, mientras la volteaba portando una escopeta que le había sido entregada por su principal, si sería capaz de matar a un transgresor que tratara de hurtar un pedazo de caña, y para demostrar cómo lo haría, carga la escopeta y al cerrarla se dispara y mata instantáneamente a uno de dichos trabajadores, el principal no es responsable del acto de su empleado, porque no era parte de sus deberes hacer tal demostración, ni el accidente sería la consecuencia natural y probable de la entrega del arma.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Eduardo Flores Colón.*

Abogado de la apelada: *Sr. A. F. Castro.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

Las alegaciones esenciales de la demanda presentada en este caso fueron las siguientes:

Que la demandante es mayor de edad, viuda, vecina de Guayanilla y la madre legítima de Tomás Rodríguez, de quien dependía para su sustento y que la demandada es una sociedad agrícola domiciliada en la ciudad de Ponce, Puerto Rico.

Que el 4 de septiembre de 1914, la demandada Trujillo & Mercado tenía como encargado de la vigilancia de su hacienda "Rufina," a un tal Ramón Correa, quien como guardián vigilante tenía el deber de usar y portar una escopeta que le había suministrado la demandada.

Que en dicho día 4 de septiembre de 1914, el guardián

vigilante de la hacienda "Rufina" mientras volteaba y vigilaba la mencionada hacienda se encontró con algunos trabajadores y al preguntarle uno de éstos si era capàz de matar a un hombre por un pedazo de caña, se puso a cargar la escopeta para demostrar a dichos trabajadores como haría si encontraba a una persona sustrayendo caña; y que al ir a cerrarla, no pudiendo cerrarse la escopeta por estar en estado inservible, dióle con tanta fuerza que ésta disparó, haciendo blanco en Tomás Rodríguez y causándole la muerte instantáneamente.

Que el guardia vigilante de la hacienda "Rufina," Ramón Correa, no sabía manejar una escopeta y al tratar de demostrar cómo había que hacer para ahuyentar a los ladrones, descuidada y negligentemente la hizo disparar, causándole la muerte a Tomás Rodríguez.

Que la demandada conocía la ignorancia del vigilante Correa, en el trabajo que se le había encomendado, y tenía conocimiento de que dicho Correa no sabía la manera de hacer funcionar una escopeta.

Que la escopeta suministrada por Trujillo & Mercado a su vigilante Correa, para el desempeño de su cargo y ejercicio de su ocupación, era una escopeta descompuesta, en mal estado, e inservible para el uso destinado.

Que el accidente sucedió como consecuencia del acto del vigilante de la hacienda "Rufina," y del descuido, culpa y negligencia de la demandada en tener un empleado incompetente y en darle a éste una escopeta inútil e inadecuada para el ejercicio de su empleo, y sin falta ni negligencia por parte de Tomás Rodríguez.

La demandante reclama la suma de $10,000 por daños y perjuicios.

Se presentó una excepción previa que fué declarada con lugar por la corte, y subsiguientemente la corte dictó sentencia a favor de la demandada.

El artículo 1804 del Código Civil, dispone, entre otros particulares, que los dueños o directores de un estableci-

miento o empresa son responsables por los perjuicios causados .por sus dependientes en el servicio de los ramos en que éstos últimos estuvieren empleados, o con ocasión de sus funciones.

Alega la apelada que la muerte de Tomás Rodríguez no fué causada por Ramón Correa mientras éste actuaba en algún ramo del servicio para el cual había sido empleado, puesto que no era parte de sus deberes hacer una demostración de la clase a que se refiere la demanda.

El precepto del artículo 1804, a que hemos hecho referencia, es muy parecido al principio de la ley común relativo a que el principal solamente puede ser responsable por los actos de su empleado dentro del alcance de su empleo, y ambas partes han invocado la jurisprudencia de la ley común.

Debe notarse que la demanda en este caso ha sido establecida en parte en la suposición de que Trujillo & Mercado era responsable, por haber dado a su empleado una escopeta en estado inservible; y en parte por la teoría de que la demandada era responsable, porque el empleado era incompetente y no sabía la manera de hacer funcionar una escopeta, y también y tal vez principalmente, porque el guardia Correa fué negligente al usarla.

Con respecto al empleado y estado inservible de la escopeta, a menos que fuera parte de su obligación el mostrarla o usarla en relación con Tomás Rodríguez, o que la entrega de la escopeta tuviera alguna otra relación de causa con el accidente, no podemos ver la responsabilidad de la demandada. El accidente de ningún modo fué la consecuencia natural y probable de la entrega de la escopeta. Este no es un caso como aquel en que el padre, por ejemplo, que se le hace responsable por los actos de negligencia de un niño que es irresponsable, a quien no se le debe confiar un arma peligrosa. Cuando un padre confía o permite que un arma de esta clase vaya a manos de un niño irresponsable, generalmente el padre es responsable de las consecuencias. 29 Cyc. 1666, 38 Cyc. 454, 455, y nota 9; 29 Cyc. 492. No existe in-

dicación alguna en la demanda de que Correa fuera irres-
ponsable, sino meramente que era incompetente y no sabía
usar armas de fuego.  De igual modo no fué la teoría de la
demanda, y los hechos probados no demuestran que la causa
natural y probable del accidente fué la incompetencia de
Correa en el conocimiento, uso y manejo de armas de fuego,
sino que la causa del accidente fué la demostración que hizo
que no pudo prever.  No es necesario que perdamos mucho
tiempo en considerar ninguna de estas teorías, porque el
caso depende más o menos directamente del hecho de si Co-
rrea actuaba dentro de los límites de su empleo.

En el caso de *Marrero* v. *López et al.*, 15 D. P. R. 766,
se confirmó la sentencia de la corte inferior, estando dividido
el criterio de este tribunal respecto a la cuestión de si po-
díamos tomar conocimiento de los hechos del juicio, de la
exposición que aparecía en la opinión de la corte sentencia-
dora.  En aquel caso el Juez Asociado Sr. MacLeary emitió
un voto concurrente haciendo un examen de los hechos.  Era
de opinión dicho juez de que cuando un mayordomo que es-
taba volteando la finca de la cual estaba encargado le pidió
a un muchacho un poco de agua a lo que éste se negó siendo
agolpeado por el primero, y al correr fué herido por un dis-
paro hecho por el mayordomo, no estando comprendido tal
acto en el límite de los deberes del mayordomo, ni en el orden
de los negocios de su principal y fuera del alcance de sus
facultades, no obligaba a su principal.  En la página 753 de
esa opinión se transcribe una parte que ha sido muy citada,
del caso de *Stone* v. *Hills*, 45 Conn. 44, 29 Am. Rep. 636, a
saber:

"La regla es de que por todo acto ejecutado por un empleado, obe-
deciendo las órdenes o instrucciones formales del principal, o desem-
peñando los negocios del principal, dentro de la esfera de su cometido,
y por actos en cualquier sentido autorizados, explícita o implícita-
mente por el poder que se le haya conferido, teniendo en consideración
la naturaleza de los servicios que se le exigen, las instrucciones reci-

bidas y las circunstancias en las cuales se cometió el acto, el principal es responsable; por actos que se separan de estas condiciones, el empleado sólo es responsable.''

Varias autoridades fueron también citadas por el Juez Asociado Sr. MacLeary, para demostrar que cuando un empleado se aparta del curso de su empleo, aunque realmente esté empleado entonces en el desempeño de los deberes de su principal, el principal no es responsable.

Se ha resuelto varias veces que el principal no es responsable por el acto de su guardia disparando a los transgresores, *Holler* v. *Ross,* 23 L. R. A. 943; *Robards* v. *P. Bannon Sewer Pipe Co.,* 18 L. R. A. (N. S.) 923; *Conchin* v. *El Paso & Southwestern R. R. Co.,* 28 L. R. A. 88; *Magar* v. *Hammond,* 3 L. R. A. (N. S.) 1038; 26 Cyc. 1541, pero en cambio cuando se dan instrucciones específicas al guardia para ahuyentar a los transgresores y él se excede un tanto en sus facultades, se ha hecho responsable al principal, como lo demuestran las autoridades que preceden inmediatamente.

Cuando a un muchacho que era el agente de su padre se le ordenó que regara el césped puso la manguera sobre un caballo de tal modo que éste salió corriendo causando averías al coche, no se consideró que el padre era responsable por su hijo menor de edad. *Evers* v. *Krouse,* 66 L. R. A. 592. En ese caso se hace referencia a la decisión del caso de *Holler* v. *Ross,* 68 N. J. L. 324, 59 L. R. A. 943. En otro caso era el deber del maquinista de una locomotora sonar su pito en cierto lugar. El tocó el pito pero lo sonó tan maliciosa y violentamente que espantó a un caballo. Se hizo responsable a la compañía por el acto del maquinista, por el principio de que el principal es responsable por los daños que provengan de un acto ejecutado por su empleado dentro de los límites del empleo de este último, sin que sea necesario tener en cuenta si el acto fué realizado negligentemente o siquiera maliciosamente. *Bittle* v. *Camden & Atlantic R. Co.,* 55 N. J. L. 615, 23 L. R. A. 283.

En el caso de *Ploof* v. *Putnam,* 26 L. R. A. (N. S.) 251,

se hizo responsable al dueño de una isla por el acto del que la cuidaba al abandonar los cables de un barco que había buscado refugio en el muelle debido a una tormenta, aunque no se le dieron instrucciones expresamente de que así lo hiciera, y la corte resolvió también que era inmaterial si el acto fué ejecutado negligente o voluntariamente, si no se ejecutó para algún fin útil del vigilante. Uno de los hechos del caso fué que al vigilante se le manifestó que el demandado no quería que la gente atára cables al muelle.

*Soderlund* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 13 L. R. A. 1193, fué un caso en el cual una partida de seis o siete hombres, incluyendo al demandante, estaban ocupados en hacer reparaciones a una vía de ferrocarril y el apelante facilitaba teresinas para ir y venir del trabajo. Al tiempo del accidente los demás miembros de la dotación llevaban las teresinas con tanta velocidad, que el demandante perdió el control de las barras del manubrio y se cayó del carro. No había necesidad de correr la teresina tan rápidamente, y eso se hizo irreflexivamente, de broma y por su propia diversión, aunque el demandante les había dicho que no fueran tan de prisa. En este caso como en el de New Jersey en el cual el maquinista tocó su pito, se resolvió que era parte del deber de los otros trabajadores correr la teresina y que el demandado era responsable.

*Garretzen* v. *Duenckel,* 50 Mo. 104; 11 A. R. 405, fué un caso en que el demandado tenía una tienda de escopetas y había dado órdenes terminantes a uno de sus dependientes de no cargar ninguna escopeta. Un comprador se negó a comprar una escopeta, a no ser que se probara. El dependiente trató de cargarla, casualmente disparó, e hirió al demandante. La corte resolvió que el dueño del establecimiento era responsable.

En el caso de *Doran* v. *Thomsen,* 19 L. R. A. (N. S.) 338. la corte resolvió que el mero hecho de proporcionar facilidades a un empleado no hacía responsable al principal. El caso fué uno en el cual se declaró que una hija había tenido

derecho a sacar el automóvil de su padre.  Mientras hacía esto, descuidadamente estropeó a otra persona y se sostuvo que el padre no era responsable.  Ella no estaba ocupada en el negocio de su padre ni se le entregó la máquina de modo especial.  La teoría de poner un aparato peligroso en manos de una persona incompetente fué negada expresamente.

En el caso de *Chesapeake and Ohio Ry. Co.* v. *Dixon,* 179, U. S. 131, que ha sido citado por el apelante, la corte cita con aprobación lo siguiente del caso de Pollock sobre Daños, (Amer. ed. 89, 90), a saber:

"Soy responsable por los perjuicios causados por mi empleado o agente, no porque esté autorizado por mí o me represente personalmente, sino porque está ocupado de mis negocios y estoy obligado a ver que mis negocios se lleven a cabo con el debido miramiento a la seguridad de otras personas."

En la nota al caso de *Ritchie* v. *Waller,* 27 L. R. A. 161, era la opinión del comentarista de que sólo recientemente se había determinado debidamente la responsabilidad.  El principal, dice el comentarista, no tiene en todos los casos que garantizar la conducta de su empleado, pero si el efecto probable de su falta de cuidado ya por la naturaleza peligrosa de los instrumentos confiados al empleado, o por el carácter exigente de sus deberes, será un grave daño a terceras personas, tiene que ser como un asegurador.

Ahora bien, aunque creemos que en este caso podría tal vez suponerse que Correa actuaba en interés de su principal, ejecutó sin embargo ese servicio de un modo tan extraordinario que su acto no estaba dentro de la previsión de ninguna persona prudente.  Trujillo & Mercado no pudieron tener ninguna idea de que al ser preguntado su empleado por un trabajador si era capaz de matar a un transgresor, que dicho sirviente hiciera una demostración de lo que haría o podía hacer.  Era imposible para cualquier hombre razonable prever que un empleado hiciera esto.  Sabemos, desde luego, que si en realidad estas personas hubieran sido trans-

gresores y si las instrucciones específicas de Correa hubieran sido de ahuyentar a los transgresores a toda costa, o hasta algo menos, que su forma descuidada de manejar la escopeta podría en circunstancias imaginables haber hecho responsable a su principal. En la demanda, sin embargo, no se alegan instrucciones o deberes específicos fuera del hecho de que era el deber de Correa usar y portar una escopeta. Los trabajadores de modo alguno fueron transgresores, ni existe nada en la demanda que sugiera que estos trabajadores, o cualesquiera otros, era probable que fueran transgresores. No tenemos idea de lo que pretendió hacer Correa después de haber cargado su escopeta, pero ciertamente que no fué su intención disparar a un espectador sin culpa. Apreciadas todas las circunstancias, no podemos ver que el demandado tenía algún deber para con el público en lo que respecta a proteger al mismo contra el acto inesperado de su agente. La causa próxima del accidente fué la demostración arbitraria por parte del agente del demandado. Debe confirmarse la sentencia.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.