RAMÓN JAIME MAYSONET, representado y asistido por sus padres con patria potestad sobre él, EMETERIO MAYSONET y GENEROSA PÉREZ, demandante y apelado, *v.* SUCESIÓN DE LUIS E. ARCELAY, integrada por sus únicos y universales herederos LUZ MARÍA y LUIS ARCELAY, JR., demandados y apelantes.

Núm. 9763.—*Sometido:* Diciembre 21, 1948. *Resuelto:* Junio 24, 1949.

[1] Véase *Merino Rodríguez Hnos.* v. *Font*, 60 D.P.R. 325.

168

*Harry M. Besosa,* abogado de los apelantes; *E. Pérez Casalduc,* y *J. Córdova Rivera,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El menor Ramón Jaime Maysonet, representado y asistido por sus padres con patria potestad, Emeterio Maysonet y Generosa Pérez, inició acción civil de daños y perjuicios contra la Sucn. de Luis E. Arcelay, integrada por sus únicos y universales herederos Luz María y Luis Arcelay, Jr., por daños sufridos por el referido menor al ser éste lanzado contra el pavimento por Mariano Burgos Torres, un empleado del causante de la Sucn. demandada, como encargado de una "machina" de caballitos que para diversión del público y mediante el pago de cinco centavos por persona, explotaba en la plaza de recreo de Manatí el referido causante.

Los demandados negaron responsabilidad y establecieron como defensa especial que de ser cierta la actuación de Burgos, la misma fué una personalísima suya, realizada fuera del mandato y esfera del empleo.

Luego de un juicio en sus méritos la corte inferior declaró con lugar la demanda y condenó a la Sucn. demandada a pagar solidariamente al demandante la suma de $2,000 en concepto de indemnización.

Apelaron los demandados y en su alegato hacen el siguiente señalamiento de errores:

"1. El haber establecido como un hecho el Hon. juez inferior que Burgos (empleado de los demandados) había tirado al menor Maysonet de la machina de caballitos 'por no haber pagado éste su entrada o porque él supiera que no la había pagado'.

"2. Porque en ningún sitio del récord ni de la transcripción de la evidencia aparece el más mínimo indicio del valor de los daños alegados o dados por probados por la Honorable Corte inferior, no estando por tanto la corte inferior autorizada ni en condiciones de fijar una cuantía de daños que no fuera una cuantía nominal."

La prueba del demandante demostró que Luis E. Arcelay, el causante de la Sucn. demandada, explotaba en la plaza de recreo de Manatí, allá para el 17 de abril de 1943 una "machina" de caballitos para la diversión del pú-

blico, para disfrutar de la cual había que pagar cinco centavos por persona, por varias vueltas, obteniendo un *ticket* en la caseta destinada a ese fin, que daba derecho a montar en uno de los caballitos. Mariano Burgos Torres era un empleado de Arcelay y el encargado de la "machina", y además de poner a funcionar el motor y echarla a correr, una vez que empezaba a dar vueltas subía a ésta y cobraba o recogía los tickets. El día de los hechos el menor demandante compró su ticket en unión a otro niño, subió a la "machina" y montó en uno de los caballitos, y luego de entregar su ticket al referido Burgos se bajó para ayudar a subir a una niñita, en los momentos en que comenzaban las vueltas, dejándole su caballo a la niña, y yéndose a montar a otro caballo, siendo en ese momento agarrado por Burgos, por la espalda y por debajo de los brazos, y lanzado por éste fuera de la "machina", dentro de la verja que circundaba la misma para evitar que las personas entraran sin pagar, cayendo el menor en el concreto, de donde tuvo que ser trasladado al hospital al no poder pararse. Sufrió la fractura del fémur derecho habiendo sido recluído en el Hospital de Distrito de Arecibo por varios meses. Antes de sufrir dicha fractura no tenía dificultad alguna para caminar, y después de dicha fractura se siente mal, no se puede doblar, no puede dormir y le duele. La certificación médica admitida por estipulación de las partes indicó que la fractura del fémur había sido "a través del Gran Trochanter". La corte inferior apreció la dificultad en los movimientos de la pierna derecha del menor e hizo constar que notaba "marcada cojera".

La prueba de los demandados tendió a demostrar que el día de los hechos el menor demandante le tiró a Burgos con un pedazo de madera dándole en la cara al decirle éste a varios muchachos que molestaban: "retírense de aquí", antes de empezar a correr la "machina"; que luego de comenzar a caminar la misma, el demandante, en unión a otros estaba brincando en ella y Burgos, que estaba en uno de los coches,

se levantó del asiento a echarle agua a la máquina y en ese mismo instante el menor se tiró de la "machina" en marcha, cuando vió a Burgos, brincando por sobre la verja y cayendo al suelo; que las funciones o deberes de Burgos eran las de estar en un asiento sentado para manejar el "cloche" hasta que la "machina" diera 12 ó 15 vueltas y que sus funciones no eran las de cobrador, habiendo para eso otra persona; que cuando el niño le tiró con el palo y le dió él no se molestó.

■ Al hacer su primer señalamiento de error, los demandados atribuyen a la corte inferior haber establecido como probado que Burgos, empleado de los demandados, había tirado al menor demandante de la "machina" de caballitos "por no haber pagado éste su entrada o porque él *supiera* que no había pagado", sin que hubiera base en la prueba para ello. (Bastardillas nuestras.)

Si examinamos la opinión encontramos que la palabra usada por la corte inferior fué "supusiera". Si bien los apelantes están en lo cierto al decir que la corte inferior eliminó del récord las manifestaciones de que "Mariano Burgos creía que estábamos montados de gratis, y entonces cuando me cogió por detrás me tiró al suelo", lo que dicha corte indicó en su opinión fué que "La forma como ocurrió el hecho induce a creer que Burgos deseaba sacar a Maysonet por no haber pagado éste su entrada o porque él supusiera que no la había pagado."

La conclusión del tribunal inferior está justificada por la prueba a que dió crédito. De la actuación de Burgos al agarrar al menor y lanzarlo fuera de la "machina" en los momentos en que éste, luego de dejarle su sitio en uno de los caballitos a una niña, se dirigía a montar en otro, hay base suficiente para inferir que Burgos podía suponer que dicho menor no había pagado su entrada. Siendo ésa la situación, resta tan sólo determinar, ante la insistencia de los apelantes de que dicha actuación estuvo fuera de las atribuciones del empleo de Burgos y que fué un acto cri-

minal suyo por el cual no deben responder los demandados, si bajo la doctrina que hace al principal no sólo responsable de los actos negligentes y descuidados si que también de los actos criminales de su agente cometidos en el curso y dentro de las atribuciones de su empleo, *Suárez* v. *Saavedra, 60* D.P.R. 605 y 52 D.P.R. 684; 2 Am. Jur., *Agency,* sec. 359 *et seq.; Fields* v. *Lancaster Cotton Mills,* 77 S.C. 546, 58 S.E. 608; *Munick* v. *City of Durham,* 181 N.C. 188, 106 S.E. 665, la actuación de Burgos fué tan desaforada o infligió castigo tan desproporcionado al menor, 1 *Restatement of the Law of Agency,* sec. 235, pág. 528, que, estando dentro de sus atribuciones como encargado de la "machina" el vigilar y proteger los intereses de su patrono en el sentido de no permitir que personas que no hubiesen pagado su entrada disfrutaran de las vueltas en la "machina", se desvió en forma tal de sus atribuciones al realizarlo, que exima de responsabilidad a los demandados.

▆▆▆ Dada la condición de Burgos como encargado de la "machina" cada vez que Arcelay se ausentaba y la forma en que operaba el negocio, o sea mediante el pago de cinco centavos y la obtención de un ticket en una casilla destinada a la venta de los mismos, que se entregaba a Burgos ya en marcha la "machina", la cual estaba circundada por una verja que no permitía acceso a la misma excepto a las personas que hubieran comprado su ticket previamente, es inevitable concluir que tanto Arcelay como Burgos durante la ausencia de aquél, trataran de impedir que personas que no hubiesen pagado disfrutaran de la diversión. Estaba por tanto, dentro de las atribuciones de Burgos como encargado de la "machina"—porque era parte esencial del negocio mismo—exigir el ticket a todo el que subiera a uno de los caballitos, y por ende, tomar aquellas medidas que razonablemente debían ejercitarse cuando alguna persona pretendía disfrutar de la diversión sin haber pagado. Por la forma en que actuó Burgos con el menor demandante la corte inferior

correctamente llegó a la conclusión de que aquél actuó bajo la creencia de que éste no había pagado por las vueltas ya iniciadas en la "machina"; y la forma criminal en que actuó, dentro de las atribuciones de su empleo y en protección de los intereses del negocio de su patrono, no exime a los demandados de responsabilidad por dicho acto. *Suárez* v. *Saavedra,* supra; *Great Southern Lumber Co.* v. *Williams,* 17 F.2d 468, (C.C.A. 5, 1927); *Starnes* v. *Monsour's No. 4,* 30 So.2d 135; 1 *Restatement of the Law of Agency,* sec. 229, pág. 506. La prueba para determinar la responsabilidad del patrono respecto a los actos del empleado no es la de si el acto de éste ha sido voluntario e intencional o no, sino la de si el empleado actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad o si se desvió de sus funciones y realizó un acto dañoso de carácter personal. La regla prevaleciente es que el patrono es responsable por los actos temerarios, voluntarios, intencionales, desenfrenados o maliciosos de su empleado, así como por sus actos imprudentes y descuidados si son realizados mientras el empleado actúa en el ejercicio de su autoridad y en el curso de su empleo o con miras al adelantamiento del negocio del patrono y no con un propósito personal suyo. En general, la regla es que el patrono es responsable de todo acto dañoso del empleado realizado mientras éste actúa dentro de la esfera de su empleo. Tan lejos van las autoridades en sostener que el patrono no está eximido de responsabilidad cuando aparece que el empleado actuó con malicia, que prueba de la malicia o intención se ha considerado base para conceder mayores daños contra el patrono. Desde luego, si se resuelve que el empleado no actuaba en el ejercicio de su autoridad o dentro de la esfera de sus atribuciones el patrono no es responsable. Tampoco lo es por la mala conducta intencional del empleado, aun cuando éste actúe en el curso de su empleo, si ésta no se desarrolla dentro de las atribuciones del empleo o en protección de los intereses del patrono.

Véanse 35 Am. Jur., *Master and Servant*, sec. 561; 3 Cooley *on Torts*, 4ta. ed., sec. 391 et seq. Cf. *Casanova* v. *González Padín* Co., 47 D.P.R. 488.

Principios similares fueron expuestos en la opinión concurrente del Juez Asociado Sr. McLeary en el caso de *Marrero* v. *López et al.*, 15 D.P.R. 766; y si bien en dicho caso se confirmó la sentencia que declaró sin lugar demanda de daños y perjuicios entablada por el padre de un menor a quien el mayordomo del demandado dió muerte con disparos de revólver en ocasión en que el menor huía de un ranchón en que dormía en los terrenos del patrono, vigilando el tabaco que pertenecía por partes iguales a su padre y al dueño, luego de haber sido agredido por el mayordomo por no haberle dado un trago de agua, la conclusión en el mismo estuvo predicada en el hecho de que al hacer el mayordomo el disparo fatal no lo hizo con el fin o intención de proteger los intereses del principal, o en ejecución de su cometido como mayordomo. Este Tribunal consideró que el mayordomo se salió de la esfera de sus atribuciones, separándose del empleo del negocio de su principal y excediéndose en su obligación.

Lo mismo podemos decir de los casos de *Martínez* v. *Trujillo & Mercado*, 24 D.P.R. 290 y *Torres* v. *J. Lema & Co.*, 36 D.P.R. 80, en ambos de los cuales se cita el de *Marrero* v. *López*, supra. En éstos, como en el de *Marrero*, se exponen los principios generales que gobiernan la responsabilidad del principal por los actos de su agente o empleado, pero se llega en cada uno de ellos a la conclusión de que los hechos realizados en cada caso por el empleado no caían dentro de los límites de su empleo o esfera de su cometido.

Los casos de este Tribunal arriba citados, en los hechos, son distinguibles del caso de autos en que, como ya hemos dicho, la actuación de Burgos caía dentro de las atribuciones de su empleo y, aunque realizada de manera criminal, lo fué con el ánimo de proteger los intereses del negocio de su patrono. No existe, por lo tanto, el primer error señalado.

■ Tampoco existe, a nuestro juicio, el segundo. La prueba demostró que hubo una fractura del fémur "por el Gran Trochanter" y que el menor estuvo recluído varios meses en el Hospital de Distrito de Arecibo, quedando según pudo apreciar la corte inferior, con "marcada cojera" en su pierna derecha y dificultad en los movimientos de la misma, sin que tal dificultad o cojera existiera antes del accidente. Y de igual manera existe prueba, admitida sin oposición de los demandados, de que después de dicha fractura el menor se siente mal, no se puede doblar, no puede dormir y le duele. En el caso de autos se reclama tan sólo indemnización por la fractura de una pierna y dolores físicos, angustias mentales y padecimientos. En casos de esta naturaleza no hay una regla exacta aplicable ni base para un cálculo matemático. *Defendini* v. *White Star Bus Line, Inc.*, 60 D.P.R. 365, 368. Lo esencial es que la existencia del daño no sea incierta o especulativa. *White Star Bus Line* v. *Glens Falls Ind. Co.*, 60 D.P.R. 852, 861. En el caso de *Defendini*, supra, este Tribunal aumentó, por considerarla inadecuada, de $500 a $1,000 la indemnización por sufrimientos físicos concedida al demandante, quien sufrió la fractura de un tobillo, pero sin quedarle incapacidad permanente alguna. En el caso de autos quedó probado que el menor sufrió la fractura de una pierna y como consecuencia, los sufrimientos y angustias mentales y dolores físicos alegados en la demanda. Bajo tales circunstancias, existiendo prueba suficiente para la determinación de la indemnización concedida, y no impugnándose ésta como una claramente inadecuada, no intervendremos con la misma. *García* y. *Fernández*, 52 D.P.R. 183, 188.

■ La corte inferior no hizo pronunciamiento alguno en cuanto a la imposición de costas. Habiéndose dictado sentencia contra los demandados, era imperativo condenarlos en costas. *Sánchez* v. *Cooperativa Azucarera*, 66 D.P.R. 346, 353. Por tal motivo, y en vista de que no existen los errores

señalados, *procede modificar la sentencia apelada para incluir un pronunciamiento imponiendo las costas a los demandados, y así modificada, procede su confirmación.*

El Juez Presidente Sr. De Jesús no intervino.