MIGUEL A. MÁRTIR SANTIAGO, demandante y recurrido, *v.* PUEBLO SUPERMARKET OF DE DIEGO, INC., JOSÉ RODRÍGUEZ COLÓN Y SPECIAL AGENTS INVESTIGATORS, INC., demandados y recurrentes los dos últimos.

Número: R-62-39    Resuelto: 29 de abril de 1963

*Marcos & Bernier* y *Enrique Igaravídez* y *Raymond L. Acosta,* abogados de los recurrentes; *C. Andréu Ribas,* abogado del recurrido.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Recurren ante nos José Rodríguez Colón y Special Agents Investigators, Inc., designada en lo sucesivo como "Investigators", en solicitud de revisión de la sentencia que les impone responsabilidad solidaria y mancomunada junto con Pueblo Supermarkets of De Diego, Inc., en lo sucesivo designada como "Pueblo", José Martí Fuentes e Israel Hernández, por los daños y perjuicios ocasionados al recurrido Miguel A. Mártir Santiago.

Los hechos que dieron lugar a la acción en este caso, son los siguientes:

El 24 de diciembre de 1958, como a eso de las siete de la noche, el recurrido y su esposa fueron al supermercado de "Pueblo" y estacionaron su automóvil en el área indicada para ello. Mártir Santiago entró al establecimiento, compró artículos por valor de $24.12, dos salchichones inclusive, pagó la cuenta y llevó la compra al automóvil donde le esperaba su señora. Regresó al supermercado a comprar unas navajitas de afeitar que necesitaba y mientras lo hacía se comía uno de los salchichones que había comprado. Declaró el recurrido que mientras estaba pagando las navajas a la cajera,

fue agarrado fuertemente por Israel Hernández, empleado de "Pueblo". Tanto este último como los otros demandados en este caso, José Martí Fuentes y Rodríguez Colón declararon que Hernández detuvo al recurrido una vez salió del supermercado y se dirigía al área del estacionamiento. La prueba demuestra que Hernández solicitó y obtuvo la ayuda de Rodríguez Colón para llevar al recurrido dentro del supermercado hasta pasarlo por el torno. El recurrido fue llevado a un pequeño cuarto almacén del supermercado. La prueba es contradictoria en cuanto al autor del golpe que el recurrido recibió en un ojo, pero el tribunal de instancia concluyó que el recurrido recibió tal golpe de parte de Rodríguez Colón (Determinación de hecho, Núm. 8). En el referido cuarto el recurrido fue entregado al policía Corbet, quien declaró que él investigó el suceso y como parte de esa investigación Rodríguez le informó que "había visto al supuesto demandante (o sea al recurrido) que había salido para afuera y se le había caído una botella debajo de una camisa y que él ayudó a otro más a meterlo adentro." (T.E. págs. 345, 351 y 433.) El recurrido fue llevado a un coche celular de la policía y trasladado en el mismo al Cuartel de la Policía de la calle Loíza donde fue metido dentro de la jaula para detenidos; luego fue sacado y conducido a la residencia del juez Veray Torregrosa quien atendió el asunto desde la escalera por donde bajaba de su residencia en los altos. (T.E. págs. 160 y 496.) El demandado Martí Fuentes, quien conocía al juez Veray, había llegado primero a la residencia de éste y se encontraba a su lado cuando el Juez ordenó el ingreso del recurrido en la cárcel por el delito de hurto menor y le fijó fianza de $200. (T.E. pág. 160.) El recurrido fue regresado al depósito municipal, Cárcel de la Capital, donde permaneció hasta que un conocido le facilitó el importe de la prima de la fianza fijada, la que así pudo prestar para salir en libertad una o dos horas después de permanecer preso.

El tribunal de instancia hizo las siguientes conclusiones de hechos adicionales que, a nuestro juicio, están sostenidas por la prueba:

"12.—Esa noche nu [sic] hubo fiesta en el hogar del demandante, sino la natural zozobra y agitación por el arresto del jefe de la familia sin saberse el paradero de éste hasta que le vieron llegar, en horas de la madrugada, agolpeado y con su ropa manchada de sangre, el rostro hinchado, su cuerpo y sus brazos adoloridos, deprimido y nervioso sin poder explicar los motivos de su ausencia a los parientes y vecinos que tenía invitados a cenar esa Nochebuena.

13.—Que la noticia del arresto del demandante, y el cargo que se le hizo fue difundida por el noticiero de la mañana, Radio-Reloj; ello llegó a conocimiento de amigos y extraños, así como en las oficinas del demandante, a oídos de sus clientes y competidores en seguros, y todo ello causó embarazosas situaciones al demandante.

14.—En [sic] vista del juicio en la causa criminal instituida por gestiones de los demandados a nombre de El Pueblo de Puerto Rico contra el demandante (Causa Criminal Núm. 59-478, de la Sala de Distrito de San Juan) se celebró meses después en Sala presidida por el Hon. José Pablo Morales, y en dicha vista declararon los co-demandados José Martí Fuentes, Israel Hernández y José Rodríguez Colón, como testigos de cargo, imputándole en esa ocasión no tan solo el hurto del salchichón 'salami' sino también el hurto de una botella de licor 'Vat 69' la que, según ellos, trató de hurtar el demandante ocultándola bajo su camina [sic] *sport* y pillada por su cinturón, lo que al ser visto por ellos motivó que detuvieran al demandante, y al forcejear con éste, cayó la botella al piso rompiéndose. Ni el salchichón ni los trozos de la botella fueron presentados en evidencia en dicha vista, y con la sola declaración del demandante, y la tirilla-recibo que éste presentó para probar que había pagado por el 'salami', fue absuelto libremente, después de haber sufrido el bochorno de ser juzgado en público por un delito denigrante."

Dicho tribunal también concluyó:

"19.—Que del conjunto de la prueba podemos concluir que tanto Israel Hernández como Martí Fuentes fueron negligentes y culpables de una falsa apreciación de los hechos y que al ver

el primero a Mártir Santiago comiéndose parte del salchichón que luego metía en el bolsillo, en forma atolondrada, sin ulterior investigación y sin usar los medios propios para determinar si el demandante había pagado por el *salami* o si lo hurtaba de hecho, optó por atacarlo e iniciar el escándalo que trajo como consecuencia la intervención, también impremeditada y abusiva del Gerente y el agente especial de la co-demandada, quién, en vez de limitar su intervención a sujetar al demandante en unión a Hernández, le propinó fuerte puñetazo sobre el rostro. No abrigamos duda de que Special Agents Investigators, Inc., fue negligente y culpable de haber destacado en dicho establecimiento en días de tanto movimiento al codemandado Rodríguez Colón, hombre de escasa experiencia y torpe, hecho que le constaba o debería haberle constado a dicha codemandada, por tenerlo a prueba. Después del incidente aparece que Special Agents Investigators, Inc., prescindió de los servicios de dicho agente.

20.—Que la participación del empleado de la codemandada Special Agent Investigators, Inc., se limitó a sujetar y agredir al demandante en la forma ya indicada y llevarlo a empujones hasta el local de atrás dentro del establecimiento Pueblo de Diego, y aunque declaró en la causa criminal instituida contra Mártir Santiago no aparece que hiciera gestión alguna para el arresto ni formulación de denuncia contra el aquí demandante. Aunque sostenemos que debe responsabilizarse por su participación en los actos que causaron daños al reclamante, es de justicia el atemperar la indemnización que le corresponda a aquellos actos individuales por él ejecutados tomando en consideración sus funciones en el lugar y todas las demás circunstancias y hechos probados."

Hubo prueba del cuidado ejercido por "Investigators" en escoger su personal y específicamente en el caso de Rodríguez Colón (T.E. págs. 250, 251 y 252); que éste le rindió buen servicio (T.E. pág. 298); que la función de este último en el momento en que ocurrieron los hechos que motivan la reclamación en este caso era "estar estacionado en la puerta observando a los niños", que si alguna persona cometía un acto que no era normal su deber era informarle al gerente del supermercado. (T.E. págs. 196–197, 252, 255, 266, 267 y 269.)

De la sentencia condenando a los demandados solidaria y mancomunadamente a pagar al recurrido la suma de $25,000 por los daños sufridos, $500 desembolsados por el recurrido para defenderse en la causa criminal, $3,000 de honorarios de abogado, más las costas, interpusieron recurso de revisión ante nos Pueblo Supermarket of De Diego, Inc., José Martí Fuentes e Israel Hernández, de una parte e "Investigators" y José Rodríguez Colón de otra parte. Denegamos el recurso de los primeros en 25 de abril de 1962 y decidimos revisar la referida sentencia a petición de los segundos en 19 de septiembre de dicho año.

Apuntan los recurrentes los errores que analizamos a continuación:

*"PRIMER ERROR:* El Honorable Tribunal Recurido cometió error al concluir que los demandados José Rodríguez Colón y Special Agents Investigators, Inc., tuvieron relación con las imputaciones de haber el demandante cometido un delito público, no existiendo prueba a tal efecto y siendo la única participación del demandado José Rodríguez Colón de acuerdo con la prueba más favorable a la parte demandante, la de que dicho demandado agredió al demandante."

Es obvio de los hechos previamente relacionados que el tribunal de instancia no incurrió en error al determinar que Rodríguez Colón tuvo relación con las imputaciones de haber el demandante cometido un delito público, pues desfiló prueba de tal imputación por parte de Rodríguez Colón que justificaba tal conclusión (T.E. págs. 345–351, 433 y 99–100). Más adelante discutiremos la responsabilidad de la recurrente Special Agents Investigators, Inc., por tales actuaciones de su agente Rodríguez Colón.

*"SEGUNDO ERROR:* El Honorable Tribunal recurrido cometió error de derecho al declarar responsable a Special Agents Investigators, Inc., de

los actos de José Rodríguez Colón a pesar de la prueba irrefutable de que dicho patrono empleó toda la diligencia de un buen padre de familia para prevenir el daño."

Arguyen los recurrentes que "Investigators" usó toda la diligencia de un buen padre de familia al escoger y entrenar a su agente Rodríguez Colón y lo destacó en el supermercado en cuestión con instrucciones y autoridad en armonía con su convenio con la gerencia de dicho negocio de proveer un guardia "cerca de la puerta o exactamente a la puerta para observar porque muchos niños entran al supermercado sin padre y sin madre, solos . . . pero las instrucciones son 'no niño entrar sin padre o madre' ". (T.E. pág. 255); que parte de esas instrucciones eran que "De alguna persona que no hubiera sido niño, cometer algún acto que no era normal . . ." el deber de Rodríguez Colón era "Reportárselo al gerente del supermercado". Declaró dicho guardia que él no podía intervenir directamente en un caso como ése. (T.E. págs. 196–197.) Bajo tales circunstancias, insisten los recurrentes que Rodríguez Colón, al ayudar a detener al recurrido y al declarar en su contra no actuó en el desempeño de sus funciones como agente de "Investigators" y, por tales razones, ésta no es responsable de sus actos de acuerdo con el Art. 1803 del Código Civil en vigor (31 L.P.R.A. sec. 5142).

Los recurrentes basan esta contención en dos grupos de decisiones nuestras, uno al efecto de que para responsabilizar al patrono precisa que el empleado haya actuado dentro del marco de sus atribuciones y funciones como tal, y el otro en el sentido de que cesa la responsabilidad del patrono cuando ha empleado "toda la diligencia de un buen padre de familia para prevenir el daño." Como parte del primer grupo se citan los casos de *Vigio* v. *Cartagena*, 71 D.P.R. 710 (1950); *Burgos* v. *Sobrinos de Villamil*, 41 D.P.R. 84 (1930); *Vélez* v. *Armstrong Hnos.*, 40 D.P.R. 709 (1930); *Torres* v. *J.*

*Lema & Co.*, 36 D.P.R. 80 (1926); y *Martínez* v. *Trujillo & Mercado,* 24 D.P.R. 290 (1916). En los primeros tres casos se trataba de conductores de vehículos que no actuaban dentro de las atribuciones de su empleo sino para su propio beneficio, y no que no eran realmente agentes de la parte demandada. En los otros dos resolvimos que una empresa comercial o una empresa agrícola no es responsable por los actos criminales ejecutados por sus empleados cuando no se realizan en el ejercicio de su empleo o con ocasión de sus funciones. El segundo grupo comprende los casos de *Castro* v. *González,* 58 D.P.R. 368 (1941); *Maldonado* v. *The P.R. Drug Co.,* 31 D.P.R. 747 (1923) y *Vélez* v. *Llavina,* 18 D.P.R. 656 (1912). En los primeros dos casos citados dijimos que no basta probar que se eligieron empleados competentes y cuidadosos; es preciso probar, además, que se ejercitó el cuidado y diligencia necesarios para evitar el daño.

■ La doctrina de los casos precedentes no es aplicable al caso ante nos, pues la prueba revela circunstancias muy distintas, o sea que Rodríguez Colón no actuó en beneficio propio sino más bien en provecho de su patrono. A nuestro juicio existía una conexión razonable y pertinente entre las actuaciones de Rodríguez Colón de que se queja el recurrido y los intereses de "Investigators". Los actos de aquél tendían razonablemente a imprimirle efectividad al objetivo final del patrono, o sea, a sus relaciones de servicio con la gerencia del supermercado. *Martínez* v. *U.S. Casualty Co.,* 79 D.P.R. 596 (1956); *González* v. *Compañía Agrícola,* 76 D.P.R. 398 (1954); *Vázquez* v. *Pueblo,* 76 D.P.R. 594 (1954); Prosser, *Law of Torts,* págs. 351–354; *Restatement of the Law, Agency* 2d, § 235.

Concluimos, por lo tanto, que "Investigators" no quedó liberada de su responsabilidad por las referidas actuaciones de su agente Rodríguez Colón y que el tribunal de instancia no incurrió en este segundo error.

*"TERCER ERROR:* El Honorable Tribunal Recurrido cometió error al condenar a los demandados recurrentes a pagar solidariamente con los demás demandados el importe de la sentencia y cometió error al condenar a los recurrentes a pagar costas y honorarios de abogado también solidariamente."

*"CUARTO ERROR:* El Honorable Tribunal Recurrido cometió error al condenar a los demandados recurrentes a pagar la suma de $25,000.00 de daños, más $500.00, más $3,000.00 en concepto de honorarios de abogado cuando:

(A) En su conclusión de hecho #20 el Tribunal recurrido concluyó que la responsabilidad de los recurrentes para con el demandante era limitada y

(B) de hecho tal fallo constituye una privación de bienes de los recurrentes sin el debido proceso de ley y contrario a la evidencia considerada como concluyente por el Tribunal recurrido."

Señalan los recurrentes que en la determinación de hechos Núm. 20, el tribunal de instancia concluyó que la participación del co-demandado Rodríguez Colón "se limitó a sujetar y agredir al demandante . . . y aunque declaró en la causa criminal instituida contra Mártir Santiago, no aparece que hiciera gestión alguna para el arresto ni formulación de denuncia contra el aquí demandante."

Si bien es cierto que la regla general de derecho es que cuando un daño es el resultado de la negligencia combinada de varias personas, éstas son responsables solidaria y mancomunadamente al perjudicado (*Prado* v. *Quiñones,* 78 D.P.R. 322, cita precisa a la pág. 345) y que no se puede distribuir dicha responsabilidad entre los responsables del daño (Harper & James, *The Law of Torts*, vol. 1, págs. 692

y 698–701; 8 A.L.R.2d 862), la prueba en este caso indubitablemente demuestra que la actuación conjunta de los recurrentes y "Pueblo" y sus agentes consistió sólo en la detención y agresión del recurrido. Las gestiones y actos realizados exclusivamente por "Pueblo" y sus agentes que dieron lugar al arresto, la encarcelación y a la radicación y vista de la causa criminal, constituyeron actos ilegales, conducta impropia que ocasionó graves daños compensables al recurrido, separados e independientes de la referida acción conjunta que también ocasionó daños compensables al recurrido. Aunque así lo indicó en su determinación de hechos Núm. 20, el tribunal de instancia sin embargo no especificó la cuantía de los daños ocasionados por una y otra actuación, sino que por el contrario determinó la cuantía total de los daños ocasionados y responsabilizó a los recurrentes por los mismos mancomunada y solidariamente con "Pueblo" y sus agentes. En bien de la justicia y en un caso como éste, creemos que procede determinar la responsabilidad de los recurrentes con motivo de sus actuaciones claramente aparentes en el récord y que no procede responsabilizarlos por actuaciones separadas y distintas de otros que ocasionaron otros y adicionales daños al recurrido. *Maddux* v. *Donaldson*, 108 N.W.2d 33, (Mich. 1961), cita precisa párrafo marcado 4, pág. 37; Harper & James, *supra*, págs. 694, 707; *Griffith Company* v. *San Diego College for Women*, 280 P.2d 203, cita precisa a la pág. 213 (Cal. 1955). Concluimos, por lo tanto, que dentro de las circunstancias del caso, la cuantía de los daños ocasionados al recurrido por las actuaciones conjuntas de los recurrentes y "Pueblo" y sus agentes es la suma de $5,000 dentro de la suma total de daños fijada por el tribunal de instancia en este caso en $25,000, y, en tal virtud, los recurrentes sólo deben responder solidaria y mancomunadamente con "Pueblo" y sus agentes en la suma de $5,000 por concepto de los daños ocasionados al recurrido y en la cuantía de $600 de honorarios de abogado. Los recurrentes no son responsables

en forma alguna por razón de los $500 desembolsados por el recurrido en la causa criminal.

*"QUINTO ERROR:*   El Honorable tribunal recurrido cometió error al negarse a dar valor a una estipulación de hechos de las partes y al concluir como cuestión de hecho que el demandante estuvo varias horas preso."

■ La argumentación de los recurrentes en apoyo de este señalamiento de error va dirigida a la apreciación que de la prueba hiciera el tribunal de instancia. De nuestro examen del récord y de la extensa transcripción de evidencia aducida en este caso concluimos que el tribunal de instancia tenía justificación para darle peso a una parte de lo estipulado en cuanto al testimonio del juez Veray, es decir, que creyó que a dicho magistrado no se le mostró prueba material, artículo alguno hurtado por el recurrido (Determinación de hechos, Núm. 10), y no creyó la parte de la estipulación al efecto de que dicho juez no vio el golpe de que se quejaba el recurrido. (T.E. págs. 469–470.) Por lo tanto, a nuestro juicio, no se incurrió en este error.

*Debe modificarse la sentencia recurrida al efecto de limitar la responsabilidad mancomunada y solidaria de los recurrentes a $5,000 de la cuantía total fijada por concepto de los daños sufridos por el recurrido, a $600 por concepto de honorarios de abogado y debe exonerarse a los recurrentes de toda responsabilidad por la cuantía de $500 desembolsados por los recurridos para defenderse en la causa criminal. Así modificada, debe confirmarse con respecto a los recurrentes.*