# 2008 DTA 71

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL II**

COMISIÓN DE SERVICIO PÚBLICO
Agencia Recurrida

v.

FRATICELLI TRUCKING CO., INC.
Recurrente

DAVID RODRÍGUEZ LASALLE
Recurrida

Núm. KLRA-2007-00920

San Juan, Puerto Rico, a 12 de mayo de 2008

Panel integrado por su Presidenta, la Juez García García,
la Juez Varona Méndez y el Juez Cabán García

Cabán García, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de revisión administrativa presentado el 7 de septiembre de 2007, comparece ante este tribunal Fraticelli Trucking Co., Inc. (Recurrente). Nos solicita que revisemos la Resolución emitida por la Comisión de Servicio Público (CSP/Recurrida) el 9 de agosto de 2007, archivada en autos el 10 de agosto de 2007. Mediante ésta, la agencia recurrida le impuso en reconsideración una multa de trescientos cincuenta dólares ($350.00) a la Recurrente.

A continuación, un resumen del tracto procesal del caso que generó el recurso que nos ocupa.

### I

El 8 de junio de 2005, la Sra. Legna Pérez Pérez de la Comisión de Servicio Público realizó un Informe de Inspección-Conductor/Vehículo a un camión cuyo dueño era Fraticelli Trucking Co., Inc. y conducido por el Sr. David Rodríguez (Operador/Co-Querellado). Ese mismo día también emitió un documento intitulado Infracción y Citación al Sr. David Rodríguez por conducta impropia. Igualmente, el Departamento de Transportación y Obras Públicas (DTOP) emitió cinco (5) boletos al Sr. David Rodríguez por infracciones a la Ley de Tránsito.

El 9 de junio de 2005, la Recurrente notificó el despido mediante carta al Sr. David Rodríguez realizando la correspondiente liquidación sobre salario.

El 20 de junio de 2006, notificada el 13 de julio de 2006, la CSP emitió a la Recurrida y al Sr. David Rodríguez una Orden para Mostrar Causa por la que no se debía cancelar la autorización TCE-505 e imponer una multa de hasta diez mil dólares ($10,000.00) por incumplir con las leyes y reglamentos de la CSP. Esencialmente realizó cuatro imputaciones. [1] Finalmente, la citó para una vista pública a celebrarse el 22 de agosto de 2006. Posteriormente, la vista fue suspendida para el 9 de octubre de 2006. La Orden para Mostrar Causa fue notificada a Fraticelli Trucking Co. Inc. y al Sr. David Rodríguez a la misma dirección postal. [2]

Oportunamente, la Recurrente replicó y solicitó la desestimación. Adujo que su compañía lleva operando

desde 1960 y siempre había cumplido con las leyes y reglamentos locales y federales que gobiernan la industria de transportación y que nunca antes había sido señalada por una violación. Arguyó que el Sr. David Rodríguez ya no trabajaba en la compañía, pero recibió un riguroso programa de adiestramiento. Igualmente expuso que en la solicitud de trabajo éste acompañó copia del certificado de buena conducta, certificado médico y certificado temporero de operador de la CSP expedido el 11 de abril de 2005. Que el día de los hechos era el primer día que se asignó al Sr. Rodríguez a conducir un transporte para la compañía y se le notificó su suspensión inmediatamente. Entendió que los hechos constitutivos de la infracción eran atribuibles al chofer y no a la compañía.

El 9 de octubre de 2006, se celebró la vista administrativa. Compareció Fraticelli Trucking Co. Inc. representada por el Sr. Eduardo Fraticelli Torres, la Sra. Mildred Del Valle, Administradora de la Asociación de Arrastre de Puerto Rico, Sr. Adolfo Ferrer Díaz, Inspector de Seguridad, la Sra. Legna Pérez Pérez, Inspectora, el Sr. Christian Fraguada, y el Lcdo. Eduardo Morales Soto. El Sr. David Rodríguez no compareció, pues había sido citado incorrectamente a la dirección de la Recurrente, donde ya no laboraba.

El 29 de junio de 2007, archivada en autos el 10 de julio de 2007, la Comisión de Servicio Público emitió Resolución y Orden. Realizó las siguientes determinaciones de hechos en el caso:

*"1. [...]*

*2. [...]*

*3. La autorización del concesionario querellado estaba sometida ante la Oficina Regional de Ponce y en proceso de ser trabajada. La autorización vence el día 9 de julio de 2011. Ver Informe del entonces Director de la Oficina Regional de Ponce, Lcdo. Gilberto Rodríguez Zayas, de fecha 7 de junio de 2006.*

*4. El 13 de junio de 2005, la inspectora Legna I. Pérez Pérez de la Oficina de Seguridad en el Transporte emitió un informe sobre unos acontecimientos ocurridos el 8 de junio de 2005, en el área de la zona portuaria frente a la Autoridad de Energía Eléctrica.*

*5. La Inspectora Legna I. Perez Pérez testificó, y haciendo referencia a su informe indicó que a eso de la 9.30 de la mañana detuvieron el camión Mack año 1991, tabilla RP-8894 número de motor 2M2P2644BMC009650, perteneciente a Fraticelli Trucking, el cual lleva un arrastre marca Streight año 1973 tablilla 692884-A perteneciente a Luis Ayala Colón Sucrs, Inc. Que este camión era operado por el operador co-querellado, Sr. David Rodríguez. Ver documentos en autos.*

*6. La Inspectora indicó que el vehículo transportaba 18,600 galones de "flamable liquid, corrosive, NOS (1,1,1,3,3,3,-hexamethyldisilasane) UN2924, PGIII. Ver documentos en autos*

*7. Que la unidad descrita anteriormente fue inspeccionada (ver hoja de inspección numero 455053) y las siguientes deficiencias fueron detectadas:*

*Desprovisto de certificado médico.*

*El arrastre tenía la goma del primer eje del lado izquierdo exterior con la lona expuesta.*

*El arrastre tenía ambas luces de parada inoperable.*

*8. Que el arrastre fue puesto fuera de servicio con el sello número 14568.*

9. Que el Operador David Rodríguez informó que el arrastre fue sacado de "Luis Ayala Colón" a petición de él, los inspectores indicaron llevar devuelta el camión para ser reparado.

10. Que mientras la inspectora Legna Pérez realizaba su trabajo de inspección, el operador David Rodríguez se le acercó a la inspectora con insinuaciones, expresiones ofensivas, y rechazada por la inspectora como las siguientes:

Pidiéndole las gafas a la inspectora "es para llevármelas para que me des tu dirección y luego llevártelas a tu casa"

"Por que tú no me das tu teléfono, aunque sea para ir a comer o al cine"

11. Que estos acercamientos ofensivos del Operador David Rodríguez fueron rechazados por la inspectora quien estaba muy molesta. La Inspectora Legna Pérez testificó en la audiencia reafirmándose en los hechos ocurridos, pero aclarando que el personal de la compañía, al llegar al lugar de los hechos, cooperó en todo momento tomando acción rápida y diligentemente.

12. Los hechos sobre la intervención con el operador querellado ocurrieron en presencia de los inspectores Adolfo Ferrer, Christian Fraguada y el Sr. Jorge Martínez del Federal Motor Carrier.

13. Que posteriormente a eso de las 10:30 de la mañana mientras conducían la patrulla oficial de la Comisión por la Avenida Kennedy, la inspectora Legna Pérez y sus compañeros inspectores se encontraron nuevamente con el camión citado anteriormente, e intentaron detenerlo.

14. Que el conductor del camión David Rodríguez comenzó a tirar besos desde el camión hacia la patrulla. Finalmente, después de detenerse, el operador David Rodríguez caminó hacia la patrulla y le dijo a la inspectora Legna Pérez "yo te voy a llevar para mi casa", lo cual ofendió a la inspectora. Esto ocurrió en presencia de los inspectores Adolfo Ferrer y Christian Fraguada.

15. El Sr. David Rodríguez manifestó que el mecánico de Luis Ayala Colón no había dado con el defecto de las luces. El inspector Adolfo Ferrer le expidió el boleto número 710893 por conducta impropia. El cual no surge del expediente que haya sido pagado por dicho co-querellado.

16. En la vista se indicó que el agente Romero de la División de Autopista de Buchanan se personó y le expidió otros boletos. El camión fue llevado hasta el cuartel de Buchanan, escoltado, por la patrulla de los inspectores donde posteriormente dos empleados de Fraticelli Trucking acudieron y arreglaron las luces.

17. El concesionario querellado, por conducto del Sr. Eduardo Fraticelli, sometió una ponencia relacionada con el trasfondo histórico de la compañía, el desempeño de ésta y el proceso de seleccionar a su personal para poder laborar en la compañía. Ver documentos en autos.

18. El Sr. Fraticelli indicó que parte del personal que estuvo involucrado en la situación ocurrida el 8 de junio de 2005 ya no se encuentra laborando para la compañía.

19. Que el co-querellado, Sr. David Rodríguez fue empleado probatorio del concesionario querellado, siguiendo un riguroso programa de reclutamiento. Que al momento de su evaluación para ser contratado se le pidió un certificado de buena conducta, certificado de operador de la CSP otorgado el 11 de abril de 2005 por la Oficina Regional de Caguas, entre otros.

20. Que el operador querellado fue empleado el 9 de mayo de 2005 e inicia su período probatorio, el cual

se le entrenó por un período de horas a tomar clases o exámenes. Que al quinto día se le asignó a trabajar como chofer de patio y se le proveyó uniforme y equipo de chofer, que luego de varios días de trabajo, el 8 de junio de 2005, ocurrió el incidente en el área de Buchanan a ochenta millas del área de trabajo de la compañía.

21. El concesionario querellado entiende que la actitud desplegada por el operador co-querellado es una injustificable, que entiende que éste debió ser arrestado por la policía, pero que ésta sólo se limitó a expedirle 5 boletos por fallas mecánicas y documentación no presentada. Los boletos expedido fueron entregados por el Sr. Hiram Giusti el mismo día, y se usaron los mismos como evidencia para la carta de despido del Sr. David Rodríguez.

22. En la vista se trajo a colación que conforme al récord de licencia expedido por el Departamento de Transportación y Obras Públicas, la dirección de éste es PO Box 0790, Gurabo, Puerto Rico 00778. También surge del récord del Departamento de Transportación y Obras Públicas que el operador, bajo su licencia de conductor número 4146590, tiene 17 violaciones a la Ley de Tránsito entre el 26 de mayo de 2001 al 24 de junio de 2005 y un monto en multas de $835.00. También se le impusieron 6 multas administrativas entre el 26 de noviembre de 2003 al 31 de mayo de 2004; se le restaron 21 puntos a su licencia de conductor. Ver documentos en autos.

23. El Oficial Examinador cuestionó al concesionario querellado si al momento de la contratación del operador David Rodríguez habían indagado su récord choferil, para determinar la elegibilidad de éste para laborar en la compañía. El Sr. Fraticelli no supo explicar si se tomó o no en consideración la evaluación del récord choferil.

24. Que en relación al boleto expedido por el Sr. Adolfo Ferrer al Sr. David Rodríguez por la conducta impropia, considera que éste es el único responsable de sus actos, mala conducta y falta de respeto a los inspectores de la Comisión.

25. El Sr. Fraticelli indicó que el día de los hechos, la Sra. Mildred Del Valle le comunicó vía telefónica lo sucedido. Que inmediatamente se instruyó al Sr. Hiram Giusti (supervisor en aquel entonces, del área norte) a personarse a la escena, y también ordenamos al Sr. Hugo Santi Santa (chofer de la compañía) a reemplazar al Sr. David Rodríguez. El Sr. Fraticelli indicó que el Sr. Rodríguez fue despedido vía telefónica de forma inmediata.

26. El Sr. Fraticelli expuso que ante la situación ocurrida, su personal de reacción actuó inmediatamente y se personaron en minutos al lugar de los hechos. Que el Sr. Giusti buscó gomas para el reemplazo de éstas al arrastre propiedad de Luis Ayala Colón. Que con las herramientas y materiales en el vehículo del Sr. Giustí, el chofer de la compañía, Sr. Hugo, reparó las luces del arrastre. Que luego de reparado todo y con el aval del personal de la Comisión y de la Policia, se autorizó continuar el viaje con el Sr. Santi conduciendo el referido camión intervenido.

27. Se indicó que el operador querellado, Sr. David Rodríguez se quedo enfrascado en una discusión en el cuartel de la Policía de Buchanan, sin saber qué ocurrió después.

28. El Sr. Fraticelli indicó que la compañía actuó rápido, despidió inmediatamente al operador, las luces y las gomas del arrastre pertenecientes a la compañía Luis Ayala Colón fueron arregladas, y se continuó con el servicio. Que la compañía no debe ser penalizada por la actuación del operador querellado. Que el chofer había sido entrenado para respetar y cumplir con las leyes y reglamentos aplicables al negocio. Que la Comisión le había otorgado un permiso provisional al operador días antes de los hechos, indicativos de que éste había cumplido con los requisitos exigidos por el Organismo.

29. *Que la Comisión evalué toda la documentación presentada por el concesionario querellado, demostrativo de lo serio que toman su trabajo, y que sería desproporcional el revocarle su autorización o multa administrativa por las actuaciones de dicho operador querellado."*

Finalmente, impuso a la Recurrente una multa administrativa de ochocientos dólares ($800.00) y se le apercibió que debió hacer un escrutinio más riguroso del personal que contrataba para trabajar con su compañía, ya que de la prueba sometida el Operador-Querellado, el Sr. David Rodríguez, tenía un historial de violaciones a la Ley de Tránsito desde el 2001 hasta el 2005. Respecto al Sr. David Rodríguez, ordenaron a la Oficina Regional de Caguas a que remitiera un informe a la Oficina del Interés Público en el que indicara si se le había expedido un permiso de operador de transporte público y tomara las acciones apropiadas contra éste.

El 18 de julio de 2007, el Recurrente presentó Reconsideración de la anterior determinación. Como parte de sus argumentos, solicitó la desestimación de los cargos, ya que la vista administrativa había sido celebrada en ausencia de una parte indispensable conforme al Art. 3.9, 3.10 y 3.14 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2159, 2160 y 2164. Entendió que el Sr. David Rodríguez, Operador-Co Querellado, debió ser incluido y que éste fue notificado indebidamente a la dirección del Recurrente. [3]

Así las cosas, el 9 de agosto de 2007, notificada el 10 de agosto de 2007, la CSP emitió Resolución y modificó solamente la multa administrativa impuesta a la Recurrente a trescientos cincuenta dólares ($350.00).

Inconforme con lo resuelto, el 7 de septiembre de 2007, el Recurrente presentó el recurso de Revisión Administrativa que nos ocupa señalando que la Comisión de Servicio Público incidió en los siguientes errores:

*"1- Erró la Comisión de Servicio Público al determinar que Fraticelli Trucking no fue diligente al indagar sobre el expediente choferil de David Rodríguez al momento de contratarlo.*

*2- Erró la Comisión de Servicio Público al determinar que la responsabilidad sobre las acciones de sus empleados que [sic] es una absoluta.*

*3- Erró la Comisión de Servicio Público al no dar debida notificación a David Rodríguez, siendo este [sic] una parte indispensable en el proceso.*

*4- Erró la Comisión al no declarar con lugar la defensa de incuria, ya que la parte estaba en estado de indefensión por la dilación al tramitar el caso.*

*5- Erró la Comisión al imponer sanciones adicionales a las multas que ya se habían impuesto por los mismos hechos, incurriendo así en una doble exposición prohibida por la Constitución del Estado Libre Asociado de Puerto Rico."*

## II

En nuestra jurisdicción y en el ámbito de la responsabilidad civil extra contractual impera la norma de que todo aquél que causa daño a otro, está obligado a reparar el daño causado. Art. 1802 del Código Civil, 31 L.P.R. A. sec. 5141. La responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Para que exista responsabilidad bajo esta disposición, es necesario que ocurra un daño, una acción u omisión culposa o negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. *Hernández v. Televicentro*, 168 D.P.R. \_\_\_ (2006), **2006 J.T.S. 151**. Al determinar si se incurrió o no en responsabilidad civil resultante de una omisión, los tribunales deberán considerar varios factores. Entre éstos, la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, y si de haberse realizado el acto omitido, se hubiera evitado el daño. *Soc. Gananciales v. G. Padín Co., Inc.,* 117 D.P.R. 94 (1986).

A tenor con lo anterior, para que se incurra en negligencia, como resultado de una omisión, tiene que existir un deber de cuidado impuesto o reconocido por ley y que ocurra el quebrantamiento de ese deber. *Hernández v. Televicentro, supra*. En consecuencia, ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño. Este deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. *Hernández v. Televicentro, supra*. Además, la relación causal entre el daño causado y la alegada omisión negligente existe cuando de haberse realizado el acto omitido, se hubiere evitado el daño. *Soc. Gananciales v. G. Padín Co., Inc., supra*.

Esta responsabilidad se extiende a actos ajenos, por medio de la figura de responsabilidad vicaria establecida en el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142. *Valle v. E.L.A.*, 157 D.P.R. ____ (2002), **2002 J.T.S. 70**, pág. 1140. El Art. 1803 del Código Civil, *supra*, establece en lo pertinente lo siguiente:

*"La obligación que impone la sec. 5141 de este título es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.*

*[...]*

*Lo son igualmente los dueños y directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.*

*[...]*

*La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño."*

Como vemos, el citado precepto impone --de forma excepcional-- responsabilidad al patrono por los actos u omisiones de sus empleados, siempre que éstos hayan actuado dentro del marco de sus atribuciones o funciones. *González v. Compañía Agrícola de Puerto Rico*, 76 D.P.R. 398, 401 (1954). Sobre este particular, hemos resuelto que el criterio determinante para establecer la responsabilidad del patrono es si al llevar a cabo su actuación, el agente tenía el propósito de servir y proteger los intereses de su patrono y no los suyos propios y si su actuación fue incidental al cumplimiento de las actuaciones autorizadas. Esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono. *Martínez v. United States Casualty Co.*, 79 D.P.R. 596, 601 (1956); *González v. Compañía Agrícola de Puerto Rico, supra*.

Aunque la jurisprudencia antes citada surge en el contexto de procesos judiciales donde se reclama responsabilidad en daños y perjuicios, es pertinente en este caso para evaluar la responsabilidad de la Recurrente por actos de su empleado David Rodríguez. En las imputaciones alegadas en la Orden de Mostrar Causa, se señala que la Recurrente como concesionaria responde por las actuaciones irrespetuosas y las conductas ofensivas del Sr. David Rodríguez. Además, que en todas las imputaciones se formulan las infracciones como cometidas por el operador David Rodríguez, responsabilizando al concesionario de forma vicaria en adición a la propia responsabilidad del operador, que también estaba autorizado por la Comisión de Servicio Público. En este contexto es propio considerar entonces la doctrina de responsabilidad vicaria del patrono para evaluar hasta dónde se le debe penalizar.

A tono con lo anterior, el Tribunal Supremo ha resuelto que la prueba para determinar la responsabilidad del patrono respecto a los actos del empleado no es la de si el acto de éste ha sido voluntario e intencional, sino si el empleado actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad o si se desvió

de sus funciones y realizó un acto dañoso de carácter personal. *Maysonet v. Sucesión Arcelay*, 70 D.P.R. 167, 173 (1949).

Sobre este particular, el Tribunal Supremo ha sido enfático al señalar que *"[l]a regla prevaleciente es que el patrono es responsable por los actos temerarios, voluntarios, intencionales, desenfrenados o maliciosos de su empleado, así como por sus actos imprudentes y descuidados si son realizados mientras el empleado actúa en el ejercicio de su autoridad y en el curso de su empleo o con miras al adelantamiento del negocio del patrono y no con un propósito personal suyo." Ibid.*

En cuanto a la responsabilidad del patrono ante una conducta delictiva de su empleado, se ha resuelto que existe responsabilidad vicaria, siempre que el acto delictivo se lleve a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses personales del agente. *Rodríguez v. Pueblo*, 75 D.P.R. 401, 409-10 (1953); *Maysonet v. Sucn. Arcelay, supra.* Al realizar esta determinación, los tribunales deberán analizar si la actuación de que se trata es una consecuencia relevante del ejercicio de las funciones del mandatario. *Rodríguez v. Pueblo, supra.*

Como vemos, respecto a la responsabilidad vicaria de una empresa por daños causados por sus empleados, el Art. 1803, *supra*, dispone que la obligación que impone el Art. 1802, *supra*, es exigible no sólo por los actos o las omisiones propias del patrono, sino también por las de sus empleados cuando éstos están en gestiones de su trabajo. *Parrilla v. Ranger American of P.R.*, 133 D.P.R. 263, 271 (1993), *Mártir v. Pueblo Supermarket*, 88 D.P.R. 229, 236 (1963). Es decir, que la actuación generadora del daño no puede responder exclusivamente a los motivos personales del empleado, sino que tiene que tener alguna relación con la gestión encomendada. *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497, 502 (1991).

La jurisprudencia ha determinado que la responsabilidad vicaria contemplada en el Art. 1803, *supra*, se extiende solamente si existe un nexo jurídico entre el causante del daño y el que viene obligado a repararlo. *Vélez Colón v. Iglesia Católica*, 105 D.P.R. 123, 127 (1976). El Tribunal Supremo ha identificado varios elementos para determinar si existe ese nexo, cuando un empleado le causa un daño a un tercero. En *Martínez v. U.S. Casualty Co., supra*, citando a *González v. Compañía Agrícola, supra*, el alto foro señaló que:

*"Lo esencial, a los fines de investigar si cierta actuación se ha realizado dentro de los límites del mandato, es determinar si, al llevarse a cabo tal actuación, o al ocurrir el accidente, el agente tenía el propósito de servir y proteger los intereses de su patrono, y no con la intención de servir los propósitos del agente y si la actuación es incidental al cumplimento de las actuaciones autorizadas, esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono"*.

Por otro lado, un patrono no es responsable por los actos delictivos de sus empleados, siempre y cuando esos actos estén desligados de los intereses del patrono y las funciones del empleado. A esos efectos, el alto foro ha expresado que *"una empresa comercial o una empresa agrícola no es responsable por los actos criminales ejecutados por sus empleados cuando no se realizan en el ejercicio de su empleo o con ocasión de sus funciones." Martír v. Pueblo Supermarket, supra*, pág. 236; *Torres v. J. Lema & Co.*, 36 D.P.R. 80, 81-82 (1926); *Martínez v. Trujillo & Mercado*, 24 D.P.R. 290, 292 (1916).

En el caso de autos, los acercamientos por parte del Sr. David Rodríguez a la inspectora no tenían relación alguna con el desempeño de sus labores como chofer de patio, específicamente, con la tarea encomendada de buscar un arrastre propiedad de Luis Ayala Colón Sucrs. Los actos ofensivos cometidos por éste respondían exclusivamente a motivaciones personales, a su carácter corrompido que no promovían los intereses de Fraticelli Trucking Inc., por lo que tales actuaciones no podían ser atribuibles a su patrono bajo la doctrina de responsabilidad vicaria.

Según las determinaciones de hechos de la Comisión de Servicio Público, mientras la inspectora Legna Pérez realizaba su trabajo de inspección, el operador David Rodríguez se le acercó a la inspectora con insinuaciones y expresiones ofensivas y posteriormente comenzó a tirar besos desde el camión hacia la patrulla. Finalmente, después de detenerse, el operador David Rodríguez caminó hacia la patrulla y le dijo a la inspectora Legna Pérez "*yo te voy a llevar para mi casa*" lo cual ofendió a la inspectora. Tales actuaciones no fueron realizadas con el propósito de servir y proteger los intereses del patrono ni de imprimirle efectividad al objetivo final de Fraticelli Trucking, Co. Inc. Todo lo contrario, las actuaciones del Sr. David Rodríguez no estaban dentro del marco de sus funciones como empleado, por lo que no podemos atribuirle responsabilidad- de forma excepcional- al patrono por los actos impropios de sus empleados.

Más aún, a pesar de que la Comisión de Servicio Público le apercibió a Fraticelli Trucking, Co. Inc. que debió hacer un escrutinio más riguroso del personal que contrata para trabajar con su compañía, entendemos que según las determinaciones de hechos, Fraticelli Trucking tomó las medidas preventivas y necesarias para que no ocurrieran los hechos acontecidos. Del resumen de la prueba se desprende el programa de adiestramiento que tiene la empresa para sus chóferes. A pesar de que el Sr. David Rodríguez tenía un historial previo de violaciones a la Ley de Tránsito, de las propias determinaciones de hechos de la agencia recurrida se desprende que el Sr. David Rodríguez era empleado probatorio y fue producto de un riguroso programa de adiestramiento. También al momento de su evaluación para ser contratado, se le pidió un certificado de buena conducta, certificado de operador de la CSP otorgado el 11 de abril de 2005 por la Oficina Regional de Caguas, entre otros. Más aún, la compañía despidió al empleado inmediatamente después de enterarse de los hechos en controversia y su conducta.

Ante el historial y documentación presentada por Fraticelli Trucking demostrativo de lo serio que realiza su trabajo, entendemos que erró la Comisión de Servicio Público al imponer la multa administrativa, ya que las actuaciones del Sr. David Rodríguez no deben ser imputables a la compañía. Se trata de una actuación contumaz de un empleado, que no fue contemplada por la Recurrente, ya que era en clara contravención a sus normas y a las directrices de las funciones de la Comisión de Servicio Público luego de la primera intervención. De la prueba se demuestra que una vez la Recurrente se entera del incidente, tomó las medidas inmediatas para garantizar el cabal cumplimiento con la ley. Concluimos que la Recurrente cumplió con su obligación evidenciaria para que no se impusiera sanción en su contra.

### III
Por los fundamentos que anteceden, revocamos la Resolución recurrida y devolvemos el caso a la Comisión de Servicio Público para la continuación de los procedimientos conforme a lo aquí decidido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2008 DTA 71**

**1.** Véase, Apéndice del Recurso de Revisión Administrativa, p. 29-31.

**2.** La dirección a la cual se notificó fue 529 Carr. 385 Firm Delivery Peñuelas, P.R. 00624. Véase, Apéndice del Recurso de Revisión Administrativa, p. 33.

**3.** *Id.*