EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Mariela Hernández Vélez<br><br>    Demandante-peticionaria<br><br>             vs.<br><br> Televicentro de Puerto Rico y<br>Moisés Vélez<br><br>    Demandados-recurridos | Certiorari<br><br>2006 TSPR 142<br><br>168 DPR ____ |

Número del Caso: CC-2005-0199

Fecha: 1 de septiembre de 2006

Tribunal de Apelaciones:

             Región Judicial de Bayamón

Juez Ponente:

             Hon. Hiram Sánchez Martínez

Abogado de la Parte Peticionaria:

             Lcdo. Luis Angel López Olmedo

Abogados de la Parte Recurrida:

             Lcdo. Radamés A. Torruella
             Lcdo. Miguel A. Rivera-Arce

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Mariela Hernández Vélez

    Demandante-peticionaria

       vs.                  CC-2005-199     CERTIORARI

Televicentro de Puerto Rico y
Moisés Vélez

    Demandados-recurridos



OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 1 de septiembre de 2006


Allá para abril de 2001 la demandante-peticionaria, Sra. Mariela Hernández Vélez, laboraba como contratista independiente de J & K Enterprises, Inc., una entidad dedicada a la producción de programas para Televicentro de Puerto Rico, específicamente para el programa conocido como Super Exclusivo. La producción del referido programa se llevaba a cabo con personal de J & K Enterprises, aunque utilizaban los camarógrafos y facilidades de Televicentro de Puerto Rico.

El 27 de abril de 2002 la señora Hernández Vélez tenía pautado entrevistar al Sr. Oscar Solo

para el segmento "¿Qué es de la vida de…?", transmitido todos los viernes a través del programa Super Exclusivo. Para trasladarse a la residencia del mencionado artista, ubicada en el pueblo de Bayamón, la demandante utilizó un vehículo propiedad de Televicentro que fue conducido por el codemandado Moisés Vélez quien, como en otras ocasiones, la acompañó en calidad de camarógrafo de exteriores.[1]

Según las determinaciones de hecho realizadas por el foro de instancia, en el transcurso del viaje el señor Vélez le expresó a la demandante que no la podía saludar en el Canal "porque los muchachos se burlaban de él", a lo que ésta le contestó que podía saludarla si quería. Además, Vélez le hizo un señalamiento a la demandante de que estaba muy blanca y necesitaba tomar sol.

Al llegar al edificio donde residía el Sr. Oscar Solo, la demandante abordó el ascensor acompañada del artista y el señor Vélez. Este último quedó ubicado detrás de Hernández Vélez, quien sintió que el codemandado le rozó los glúteos con la cámara. El segundo incidente ocurrió al abrir el ascensor, cuando Vélez rozó nuevamente a la demandante, esta vez en la espalda. En ese momento Hernández Vélez le expresó: "Déjate de la jodienda, deja la mierda y suspende que si viniste calientito hoy te

---

[1] Es preciso señalar que a la fecha de los hechos la señora Hernández Vélez no poseía vehículo propio ni licencia autorizada para conducir.

jodiste" y que si era para calentarse la madre del señor Solo tenía una olla puesta.

Finalizada la entrevista, la demandante abordó nuevamente el vehículo conducido por Vélez, quien tomó una ruta distinta a la que ella conocía.[2] Posteriormente, ésta omento ésta le indicó que se sentía mareada y le pidió que se dirigieran inmediatamente para el Canal. Vélez le expresó que se veía muy pálida y comenzó a realizar sonidos jadeantes con la boca y a hacer ruidos similares a los que se producen cuando se succiona algo. Además, comenzó a lamerse los labios.

Ante tal escenario, la demandante le preguntó qué le pasaba, a lo que Vélez contestó que "ella le gustaba". En reacción a dicho comentario, Hernández Vélez le inquirió: "qué carajo te pasa conmigo, llévame al Canal". Vélez continuó realizando sonidos con la boca y le indicó que "hacía tiempo que no tenía buen sexo". Molesta con la situación, la demandante insultó al codemandado y le cuestionó por qué estaba haciendo eso. Inmediatamente tomó su abrigo y se acercó a la ventana de la puerta que le quedaba cerca.

Más adelante, y luego de un momento de silencio, cuando la demandante miró al codemandado se percató que éste tenía su miembro sexual masculino fuera del pantalón.

---

[2] De las determinaciones de hecho del tribunal de instancia surge que el señor Vélez le indicó a la demandante que "iba a aprovechar para hacer algo." Ésta le contestó que no tenía objeción, siempre que estuvieran en el Canal antes de la 1:00 p.m.

La demandante comenzó a gritarle "sucio, depravado" y le exigió que la llevara al Canal. En ese momento el codemandado levantó su mano derecha, lo que hizo pensar a Hernández Vélez que éste tenía intenciones de agredirla, por lo que rápidamente reaccionó golpeándolo con su mano izquierda. Nuevamente la demandante le exigió a Vélez que no la tocara y la llevara inmediatamente al Canal. Una vez en el Canal, el codemandado le expresó a Hernández Vélez que lo sucedido debía quedar entre ellos.

Enterado del incidente, el Sr. José E. Ramos, Presidente de Televicentro de Puerto Rico, refirió el asunto a la Sra. Norma Cruzado, Directora de Recursos Humanos del Canal. Ésta procedió a entrevistar a ambas partes por separado. Durante su entrevista, Vélez admitió haber cometido un error y se disculpó por lo sucedido.

Finalizada la investigación administrativa, el Canal cursó una carta al codemandado advirtiéndole que la política del Canal era mantener un ambiente libre de todas formas de intimidación y hostigamiento y que en el futuro no tolerarían este tipo de conducta.[3] Además, se le impartieron instrucciones específicas al supervisor de Vélez a los efectos de que en adelante éste no podría trabajar junto a Hernández Vélez ni personal de la producción de Super Exclusivo. Del mismo modo, se ordenó

---

[3] En la referida misiva se hizo alusión a un supuesto incidente previo de hostigamiento sexual del cual la señora Cruzado había tenido conocimiento. Este asunto será discutido en detalle más adelante.

que se cumpliera la directriz existente en el Canal en cuanto a que no se le proveería transportación en vehículos oficiales a ninguna persona que no fuera empleado del mismo.

Así las cosas, el 6 de junio de 2001 la señora Hernández Vélez presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan[4], una demanda por hostigamiento sexual, al amparo de la Ley 17 del 22 de abril de 1988[5] y el Artículo 1802 del Código Civil de Puerto Rico.[6] En la misma figuraban como demandados Televicentro de Puerto Rico y el Sr. Moisés Vélez. Posteriormente, la referida demanda fue enmendada para incluir como codemandados al Sr. Antulio Santarrosa y a J & K Enterprises y, a su vez, para incorporar una causa de acción por daños basada en el Artículo 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5142.[7]

Varios meses más tarde, y como consecuencia de una moción de desistimiento voluntario radicada por Hernández Vélez, el tribunal de instancia dictó Sentencia Parcial

---

[4] Posteriormente el caso fue trasladado al Tribunal de Primera Instancia de Bayamón.

[5] 29 L.P.R.A. sec. 155 *et als*.

[6] 31 L.P.R.A. sec. 5141.

[7] Televicentro contestó la demanda y las posteriores demandas enmendadas, lo que también hizo el codemandado Vélez. Este último incoó, además, una reconvención por daños contra la demandante alegando que voluntariamente ésta había practicado sexo oral con él y reclamó daños y perjuicios por divulgar una versión falsa de los hechos. La demandante contestó la reconvención en la que negó lo aducido por Vélez en su reconvención.

desestimando la causa de acción radicada en contra de Antulio Santarrosa. La demandante también retiró la causa de acción radicada en contra de Moisés Vélez y Televicentro, sobre hostigamiento sexual, al amparo de las disposiciones de la Ley Número 17 de 22 de abril de 1988, ante, y bajo el Título VII de la Ley Federal de Derechos Civiles; manteniendo, sin embargo, su reclamación de daños y perjuicios contra dichos codemandados bajo las disposiciones de los Artículos 1802 y 1803 del Código Civil de Puerto Rico, ante.

Luego de varios trámites e incidentes procesales, el 28 de octubre de 2003, el Tribunal de Primera Instancia declaró con lugar la reclamación de daños y perjuicios presentada en contra de Televicentro de Puerto Rico y su empleado Moisés Vélez, al determinar que ambos le respondían a ésta por los daños y perjuicios sufridos por ella como consecuencia de los avances sexuales del empleado. En cuanto a este último, el foro primario determinó que sus actuaciones configuraban una agresión, situación que era civilmente accionable bajo el Artículo 1802 del Código Civil, ante.

En lo que respecta a la codemandada Televicentro de Puerto Rico, el foro de instancia entendió que fue negligente al no tomar las medidas cautelares para la prevención y erradicación del hostigamiento sexual en el empleo, a pesar de que --alegadamente-- tenía conocimiento de conducta hostigante del demandado Moisés Vélez. Al

fundamentar su determinación el referido foro hizo alusión a un supuesto incidente de carácter sexual que protagonizó Vélez con una maquillista del Canal. El tribunal de instancia sostuvo que este alegado incidente con la maquillista constituía una primera violación a la política de hostigamiento sexual del Canal que debió llevar a la codemandada a "interv[enir] con medidas cautelares para prevenir otros actos de hostigamiento sexual."

Como segundo fundamento a su determinación, el foro de instancia resolvió que en el presente caso es de aplicación lo dispuesto en el <u>Artículo 1803 del Código Civil</u>, ante, sobre responsabilidad vicaria del patrono. En ese sentido expresó que el Canal respondía por los actos de Vélez por no haber tomado las medidas cautelares para la prevención y erradicación del hostigamiento sexual en el empleo. Concluyó que dicha Corporación no demostró que hubiera empleado toda la diligencia de un buen padre de familia para prevenir el daño, señalando que, de haber tomado medidas encaminadas a evitar la conducta hostigante de Vélez, se hubiese liberado de responsabilidad.

De esta forma le impuso a ambos codemandados responsabilidad solidaria por los daños y perjuicios sufridos por la demandante que, según resolvió, ascienden a $50,000, más las costas del litigio.[8] El tribunal no hizo expresión alguna sobre la causa de acción sobre

---

[8] El foro de instancia declaró sin lugar la reconvención del demandado Moisés Vélez.

hostigamiento sexual al amparo de las disposiciones de la Ley Número 17 de 22 de abril de 1988 ya que, como señaláramos anteriormente, la misma fue desistida por la demandante temprano en el proceso.

Inconforme con la determinación del Tribunal de Primera Instancia, Televicentro acudió al Tribunal de Apelaciones mediante recurso de apelación. En síntesis, alegó que incidió el foro de instancia al decretar que era <u>vicariamente</u> responsable de la conducta incurrida por Vélez hacia la demandante, toda vez que en el presente caso no se configuran los elementos requeridos para que se active dicha responsabilidad. En ese sentido, argumentó que los acercamientos de índole sexual realizados por su empleado constituyeron actos de carácter exclusivamente personal que no tienen relación alguna con algún interés o beneficio de Televicentro.

Como segundo señalamiento de error, la codemandada alegó que incidió el foro de instancia al determinar que había incurrido en negligencia al no anticipar las consecuencias probables del alegado incidente de carácter sexual en el que Vélez estuvo implicado y que involucraron a una maquillista del Canal. Sobre este particular, adujo que el incidente al que hace alusión el tribunal realmente fue un malentendido y que así lo reconoció y estableció el propio tribunal de instancia en sus determinaciones de hechos.

El foro apelativo intermedio, mediante sentencia a esos efectos, --al revocar la sentencia apelada-- determinó, en síntesis, que: el foro de instancia había errado al determinar que Televicentro respondía vicariamente por los actos de su empleado Vélez ya que la conducta observada por éste no formaba parte del marco de sus funciones y atribuciones y debido a que no existía una conexión razonable y pertinente entre los actos de Vélez y los intereses o beneficio económico de Televicentro; requisitos exigidos por el Artículo 1803 del Código Civil, ante, y nuestra jurisprudencia, interpretativa de la referida disposición estatutaria.[9]

Inconforme, Hernández Vélez acudió ante este Tribunal mediante recurso de *certiorari*. Le imputó al Tribunal de Apelaciones haber errado al revocar la sentencia emitida por el foro de instancia en el presente caso e intervenir indebidamente con las determinaciones de hechos que hiciera el tribunal de instancia. El 20 de mayo de 2005 expedimos el recurso. Contando con la comparecencia de ambas partes, y estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

---

[9] El Tribunal de Apelaciones consideró innecesario entrar a discutir el segundo señalamiento de error de Televicentro de Puerto Rico relacionado con la causa de acción instada al amparo del Artículo 1802 del Código Civil, ante.

II

En nuestra jurisdicción la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil, 31 L.P.R.A. sec. 5141.[10] Bacó v. ANR Construction Corp., res. el 23 de septiembre de 2004, 2004 TSPR 154, Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Valle v. Amer. Inter. Ins. Co., 108 D.P.R. 692 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976). Como es sabido, para que exista responsabilidad bajo este precepto, es necesario que ocurra un daño, una acción u omisión culposa o negligente y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Bacó v. ANR Construction Corp., ante; Montalvo v. Cruz, ante; Toro Aponte v. E.L.A., 142 D.P.R. 464, 472-73 (1997).

Refiriéndonos específicamente al asunto de las omisiones, hemos señalado que al determinar si se incurrió o no en responsabilidad civil resultante de una omisión, los tribunales deberán considerar varios factores, a

---

[10] El referido Artículo dispone:

> "El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización."

saber: (i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si de haberse realizado el acto omitido se hubiera evitado el daño. Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 106 (1986).

En cuanto al primero de estos factores hemos señalado que la ocurrencia de una omisión "sólo da lugar a una causa de acción en los casos en que exista un deber de actuar." Elba A.B.M. v. U.P.R., ante, a la pág. 308, (citando a J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1983, pág. 80). Asimismo, hemos resuelto que una omisión genera responsabilidad civil siempre que la misma constituya "conducta antijurídica imputable". Arroyo López v. E.L.A., 126 D.P.R. 682, 686 (1990).

A tono con lo anterior, se ha señalado que para que se incurra en negligencia, como resultado de una omisión, tiene que existir un deber de cuidado impuesto o reconocido por ley y que ocurra el quebrantamiento de ese deber. H.M. Brau Del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 183. Esto es, "si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel grado de cuidado, diligencia, vigilancia y precaución que las circunstancias le exigen." Arroyo López v. E.L.A., ante, a la pág. 686.

Cónsono con lo anterior, hemos resuelto que "ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño." Arroyo López v. E.L.A., ante, a la pág. 686-87. Este deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible. Sin embargo, debe quedar claro que, "la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas." Elba A.B.M. v. U.P.R., ante, a la pág. 309. Lo esencial en estos casos es que se tenga el deber de prever en forma general consecuencias de determinada clase. *Ibíd*. Sobre este particular hemos sido enfáticos al expresar que sin la existencia de este "deber de cuidado mayor" no puede responsabilizarse a una persona porque no haya realizado el acto de que se trate. Ramírez Salcedo v. E.L.A., ante, a las págs. 393-94.

Por otro lado, y en lo que respecta al asunto específico de la relación causal que debe existir entre el daño causado y la alegada omisión negligente, hemos precisado que la misma existe cuando "de haberse realizado el acto omitido se hubiere evitado el daño." Soc. Gananciales v. G. Padín Co., Inc., ante, a la pág. 106. En ese sentido hemos pautado que "[n]o es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la

experiencia general". Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, 134 (1974). Conforme con lo anterior, un daño podrá ser considerado como el resultado probable y natural de un acto u omisión negligente si luego del suceso, mirándolo retroactivamente, éste parece ser la consecuencia razonable y común de la acción u omisión de que se trate. Montalvo v. Cruz, ante, a las págs. 756-57.

Por otra parte, es harto conocido que en nuestro ordenamiento jurídico la obligación de reparar daños generalmente dimana de un hecho propio. Art. 1802 Código Civil, ante. Ello no obstante, como excepción a esta norma está la figura de responsabilidad vicaria, según establecida el Artículo 1803 del Código Civil, ante. Este precepto "impone responsabilidad por los actos u omisiones, culposas o negligentes, de aquellas personas por quienes se debe responder, siempre que con la culpa o negligencia de éstas concurra la del principal, la que se presume." H.M. Brau Del Toro, Los daños y perjuicios extracontractuales en Puerto Rico, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 763. Esto dependerá de que el patrono no haya empleado toda la diligencia de un buen padre de familia para prevenir el daño. Ibíd.

En lo que respecta específicamente a la controversia ante nos, el Artículo 1803 del Código Civil dispone:

> La obligación que impone [el Artículo 1802] de este título es exigible, no sólo por los actos u omisiones propios, sino por los de aquellas personas de quienes se debe responder.
>
> . . . .
>
> Lo son igualmente los dueños o directores de un establecimiento o empresa respecto de los perjuicios causados por sus dependientes en el servicio de los ramos en que los tuvieran empleados, o con ocasión de sus funciones.
>
> . . . .
>
> La responsabilidad de que trata esta sección cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.

Como vemos, el citado precepto impone --de forma excepcional-- responsabilidad al patrono por los actos u omisiones de sus empleados, siempre que éstos hayan actuado dentro del marco de sus atribuciones o funciones. González v. Compañía Agrícola de Puerto Rico, 76 D.P.R. 398, 401 (1954). Sobre este particular, hemos resuelto que el criterio determinante para establecer la responsabilidad del patrono es si al llevar a cabo su actuación, el agente tenía el propósito de servir y proteger los intereses de su patrono y no los suyos propios y si su actuación fue incidental al cumplimiento de las actuaciones autorizadas. Esto es, si existe una conexión razonable y pertinente entre el acto del agente y los intereses del patrono y si el acto del agente tiende razonablemente a imprimirle efectividad al objetivo final del patrono. Martínez v. United States Casualty Co., 79

D.P.R. 596, 601 (1956); González v. Compañía Agrícola de Puerto Rico, 76 D.P.R. 398, 401 (1954).

A tono con lo anterior, hemos resuelto que la prueba para determinar la responsabilidad del patrono respecto a los actos del empleado no es la de si el acto de éste ha sido voluntario e intencional, sino si el empleado actuaba en beneficio del negocio del patrono y dentro de la esfera de su autoridad o si se desvió de sus funciones y realizó un acto dañoso de carácter personal. Maysonet v. Sucesión Arcelay, 70 D.P.R. 167, 173 (1949).

Sobre este particular este Tribunal ha sido enfático al señalar que "[l]a regla prevaleciente es que el patrono es responsable por los actos temerarios, voluntarios, intencionales, desenfrenados o maliciosos de su empleado, así como por sus actos imprudentes y descuidados si son realizados mientras el empleado actúa en el ejercicio de su autoridad y en el curso de su empleo o con miras al adelantamiento del negocio del patrono y no con un propósito personal suyo." *Ibid*.

En cuanto a la responsabilidad del patrono ante una conducta delictiva de su empleado, hemos resuelto que existe responsabilidad vicaria siempre que el acto delictivo se lleve a cabo como un incidente de la protección de los intereses del patrono y no en protección de los intereses personales del agente. Rodríguez v. Pueblo, 75 D.P.R. 401, 409-10 (1953); Maysonet v. Sucn. Arcelay, ante. Al realizar esta determinación los

tribunales deberán analizar si la actuación de que se trata es una consecuencia relevante del ejercicio de las funciones del mandatario. Rodríguez v. Pueblo, ante.

III

Como señaláramos anteriormente, en el presente caso el foro de instancia le impuso responsabilidad solidaria a la codemandada Televicentro de Puerto Rico al determinar que ésta falló en prever la conducta hostigadora de carácter sexual de su empleado, el codemandado Moisés Vélez, a pesar de que --según resolvió-- éste había protagonizado un incidente previo que era conocido por el Canal. Citando el Artículo 1803 del Código Civil, el foro primario expresó, además, que la codemandada Televicentro de Puerto Rico no demostró que hubiera empleado toda la diligencia de un buen padre de familia para prevenir y evitar la conducta de su empleado. El foro apelativo intermedio revocó dicha determinación, por entender que en el presente caso no se configuran los elementos requeridos para que se active dicha responsabilidad. Confirmamos; veamos por qué.

Refiriéndonos, en primer lugar, a la causa de acción instada al amparo del antes citado Artículo 1803, y luego de realizar un análisis responsable de los hechos que dieron lugar a la presente controversia, estamos totalmente convencidos de que en el caso de autos no se cumplen los requisitos mínimos indispensables para que se

active la extensión de responsabilidad establecida en el Artículo 1803 del Código Civil, ante. Esto es, la actuación del codemandado Vélez al rozar varias veces a la demandante con su cámara y mostrarle su miembro sexual mientras realizaba ruidos de tipo de sexual con su boca, definitivamente <u>no</u> fue realizada con el propósito de "servir y proteger los intereses del patrono" ni, mucho menos, de imprimirle efectividad al objetivo final de su empresa.

Por más que analicemos los hechos del presente caso no existe posibilidad alguna de que encontremos una conexión razonable y pertinente entre el acto despreciable, depravado y accionable del codemandado Moisés Vélez y los intereses de Televicentro de Puerto Rico. Todo lo contrario, el cuadro fáctico ante nos apunta indubitadamente a que la actuación del empleado respondía exclusivamente a motivos personales, que en nada beneficiaban el negocio del patrono ni estaban dentro de la esfera de su autoridad. Los avances sexuales en que Vélez incurrió eran constitutivos de delito público, actos por los cuales Televicentro <u>no</u> responde civilmente, pues lo contrario constituiría la imposición de <u>responsabilidad absoluta</u> a un patrono, <u>lo cual es impermisible</u> bajo dicho estatuto. <u>Mártir Santiago</u> v. <u>Pueblo Supermarkets</u>, 88 D.P.R. 229 (1963).

Vemos, pues, que en el presente caso no existe duda alguna de que el codemandado Moisés Vélez debe responder

por los actos deleznables en que incurrió en el día de los hechos. Ello no obstante, el grado de depravación de que fue capaz Vélez en dicho día, no debe nublar nuestro entendimiento jurídico, ni influenciarlo de tal manera, como para responsabilizar civilmente a una parte demandada que, conforme las leyes y jurisprudencia aplicable, debe ser exonerada.

No podemos finalizar sin exponer los fundamentos que nos llevan a descartar la teoría esbozada por el foro primario a los efectos de que la codemandada Televicentro de Puerto Rico incurrió en omisión y, por lo tanto, debe responder bajo el Artículo 1802 del Código Civil, ante, al no tomar las acciones previsoras pertinentes para evitar que el codemandado Moisés Vélez incurriera en conducta hostigante en el empleo.

De entrada debemos puntualizar que el primer error en que incurre el foro de instancia al imponerle responsabilidad a la codemandada Televicentro de Puerto Rico bajo este fundamento radica en que, al así hacerlo, utilizó --aunque de forma solapada-- los postulados de la Ley de Hostigamiento Sexual en el Empleo, Ley Número 17 de 22 de abril de 1988, ante, para demostrar la existencia de un deber jurídico de actuar por parte del Canal. Ello sin reparar en el hecho de que la Ley Número 17 no es aplicable a los hechos del presente caso, no sólo porque la demandante desistió de la causa de acción instada al amparo de ésta, sino también porque se le impone a

Televicentro el deber de actuar en relación con una persona que <u>no</u> es su empleado; lo cual, por definición, está fuera del ámbito de esta Ley.

El <u>segundo error</u> en que incurrió el foro de instancia con relación a esta determinación consiste en haber fundamentado su discusión en la existencia de un supuesto incidente anterior de hostigamiento sexual por parte del codemandado Vélez, en que Televicentro, alegadamente, no tomó la acción correctiva necesaria respecto al mismo, y que, de haberlo hecho, no hubiera ocurrido el incidente con la peticionaria Hernández Vélez.

A tenor con las determinaciones de hecho realizadas por el <u>propio</u> foro de instancia este alegado incidente tuvo lugar en una ocasión en que el codemandado Vélez había acudido muy preocupado a la oficina de la señora Cruzado, Directora de Recursos Humanos de Televicentro, a relatarle que su hermano le había informado que lo iban a acusar de hostigamiento sexual. Le relató que lo acusaban de tratar de darle un beso en la boca a una maquillista empleada de Televicentro.

Según estableció claramente el <u>propio</u> foro de instancia en sus determinaciones de hechos, <u>en esa ocasión</u> <u>el que relató lo sucedido fue el codemandado Vélez, y le</u> <u>indicó que había entrado al departamento de maquillaje a</u> <u>dar un beso como de costumbre, y que cuando fue a hacer</u> <u>esto, a saludar a la maquillista, había tropezado con una</u>

silla y la maquillista "pensó" que él le iba a dar un beso en la boca.

Esta versión fue corroborada por la referida maquillista. A tales efectos, en la determinación de hecho número 47 el foro primario estableció que:

> "La Sra. Cruzado llamó a la empleada Ruthlyn envuelta en dicho incidente y ésta le dijo que ella se 'asustó y creyó que le iba a dar un beso en la boca', (el codemandado Vélez) pero que se estaban saludando como siempre. (Énfasis nuestro).

Como vemos, en el presente caso la maquillista nunca se querelló ante dicha empresa ni de forma informal ni formal. Esto es, nunca hubo una querella que pusiera en movimiento el procedimiento de disciplina correspondiente en estos casos. Por otro lado, somos del criterio que la información que recibió Televicentro respecto a la ocurrencia de este incidente, la cual originalmente provino del propio Vélez, no era demostrativa de conducta impropia alguna de parte de éste.

Surge claramente de las determinaciones de hecho que esta situación fue investigada por Televicentro y que la Directora de su Departamento de Recursos Humanos entrevistó a la empleada involucrada en el malentendido. Ésta corroboró la versión brindada por Vélez a los efectos de que ella mal interpretó lo sucedido. Ante esta realidad fáctica --expuesta y reconocida por el foro primario-- es evidente que Televicentro no tenía por qué realizar

ninguna otra gestión en relación con este alegado incidente.

No obstante lo anterior, y aun asumiendo a los fines de la argumentación, que el incidente con la maquillista debió haber puesto en vigor el procedimiento disciplinario establecido por Televicentro en protección de su política contra el hostigamiento sexual, conforme al mismo, todo lo que procedía era una reprimenda y/o una suspensión de empleo sin paga.

Asumiendo, nuevamente a los fines de la argumentación, que Televicentro hubiera emitido una reprimenda respecto a Vélez y/o, incluso, lo hubiere suspendido: ¿dicha acción disciplinaria hubiera evitado la ocurrencia del incidente con la demandante Hernández Vélez? La contestación en la negativa es mandatoria; su conducta criminal era totalmente imprevisible.

Vemos, pues, que a diferencia de lo resuelto por el foro de instancia, un examen objetivo, imparcial y desapasionado de los hechos del presente caso nos lleva inexorablemente a concluir que Televicentro no tenía razón de peso alguna para prever que Vélez era capaz de cometer actos como los que se le imputan haber cometido.[11] Únicamente existe, en su récord de empleado, un incidente

---

[11] Es importante puntualizar que al llegar a esta conclusión no estamos de forma alguna interviniendo con las determinaciones de hechos del tribunal de instancia. Todo lo contrario, en todo momento hemos sido enfáticos al señalar que lo expresado surge de forma íntegra de las propias determinaciones realizadas por el foro primario.

aislado --el de la empleada maquillista-- el cual, examinado en su justa perspectiva, no es suficiente para poner sobre aviso a una empresa sobre la posible comisión de actos futuros de hostigamiento sexual por parte de ese empleado; sobre todo cuando consideramos que la única información que tenía esa empresa --según las propias determinaciones del foro primario-- era que la maquillista se había asustado y había creído que Vélez se proponía besarla. Si a ello le añadimos que, ni antes ni después de ese incidente, Vélez había sido señalado como una persona propensa a cometer actos de esa índole, realmente no se puede hablar de que Televicentro incurrió en una omisión que genera responsabilidad.

En vista de lo antes expuesto, es evidente que en el presente caso no procede imponerle responsabilidad --ni vicaria ni por omisión-- a la codemandada Televicentro de Puerto Rico por los daños y perjuicios sufridos por la demandante Hernández Vélez.


IV

A la luz de los fundamentos antes expresados, procede decretar la confirmación de la sentencia emitida por el Tribunal de Apelaciones en el presente caso, revocatoria la misma de la emitida por el Tribunal de Primera Instancia, con relación a la codemandada Televicentro de Puerto Rico.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mariela Hernández Vélez

    Demandante-peticionaria

       vs.              CC-2005-199     CERTIORARI

Televicentro de Puerto Rico y
Moisés Vélez

    Demandados-recurridos

SENTENCIA

San Juan, Puerto Rico, a 1 de septiembre de 2006

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones, revocatoria la misma de la emitida por el Tribunal de Primera Instancia, con relación a la codemandada Televicentro de Puerto Rico.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez emitió Opinión disidente a la cual se unió la Juez Asociada señora Fiol Matta. El Juez Presidente señor Hernández Denton no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mariela Hernández Vélez

      Peticionaria

        v.

                                 CC-2005-199

Televicentro de Puerto Rico
y Sr. Moisés Vélez

      Recurridos

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une la Jueza Asociada señora Fiol Matta.

San Juan, Puerto Rico a 1 de septiembre de 2006

      El caso de epígrafe nos brindó la oportunidad de resolver que los dueños o directores de un establecimiento o empresa responden civilmente por los daños y perjuicios ocasionados por uno de sus empleados al hostigar sexualmente a un tercero, a tenor con lo dispuesto en el Artículo 1802 del Código Civil. De esta forma se reforzaba la clara política pública que priva en nuestra sociedad de rechazo al acoso sexual en el trabajo.

I

      El caso de epígrafe se inició en julio de 2001 mediante la presentación de una demanda por hostigamiento sexual bajo la Ley Núm. 17 de 22 de

abril de 1988, 29 L.P.R.A. secs. 155 *et. seq.*, y bajo los Arts. 1802 y 1803 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 5141 y 5142. La demanda se instó contra Televicentro de Puerto Rico ("Televicentro") y el Sr. Moisés Vélez, empleado de esta última. Se alegó en la misma, que el señor Vélez llevó a cabo actos de naturaleza sexual no deseados contra la demandante, Sra. Mariela Hernández Vélez.[12] Contra Televicentro se alegó que había sido negligente al no prevenir, desalentar o evitar, que su empleado incurriera en actos de carácter sexual en el empleo. En particular, a la luz del historial previo de conducta de Vélez. Finalmente, se indicó que ambos respondían solidariamente.

La demandante por su parte, laboraba en calidad de contratista independiente para la compañía J & K Enterprises, Inc. (en adelante "J & K Enterprises"), la cual se dedica a la producción de programas para Televicentro de Puerto Rico, específicamente del programa Super Exclusivo. Para el periodo de los hechos alegados en la demanda este programa transmitía todos los viernes un segmento titulado: "¿Qué es de la vida de . . .?" En el mismo, se entrevistaba a un actor reconocido del pasado, sobre el cual poco se sabía en la actualidad.

---

[12] El Sr. Moisés Vélez reconvino y alegó que en realidad quien le hizo acercamientos sexuales había sido la peticionaria y luego, le difamó y calumnió. Adujo que la divulgación maliciosa, culposa y/o negligente de los hechos de este caso lo han desacreditado en su trabajo, en su comunidad y en su hogar. Véase Contestación a la Demanda Enmendada, apéndice del recurso de *certiorari*, págs. 78-80.

J & K Enterprises, a su vez, era un contratista independiente de Televicentro. Esta compañía contrata sus propios empleados pero Televicentro le provee sus camarógrafos para grabar sus entrevistas, además de que le facilita una oficina en sus predios para su operación.

Instada la demanda, Televicentro contestó la misma. **En su contestación, Televicentro negó su responsabilidad e incluso, rechazó que el señor Vélez estuviese involucrado en un incidente previo de índole sexual.** Alegó que actuó como un buen padre de familia al llevar a cabo una investigación adecuada sobre lo acontecido y tomar como medida correctiva que el señor Vélez no fuese asignado a las grabaciones con la peticionaria. Televicentro indicó que tenía una política sobre hostigamiento sexual, contenida en un memorando de 14 de junio de 1999, que había circulado a todos sus empleados.[13]

---

[13] La política sobre hostigamiento sexual de Televicentro se recogía en un memorando preparado por la gerencia del canal televisivo y circulado entre los empleados. En el mismo se indicaba lo siguiente:

> A pesar que todos los tipos de hostigamiento mencionados están prohibidos, el hostigamiento sexual merece atención especial. El hostigamiento por sexo es prohibido tanto con el sexo opuesto como en situaciones del mismo sexo, no importa la preferencia sexual del individuo involucrado. El hostigamiento sexual puede consistir en acercamientos sexuales no deseados, solicitud de favores sexuales y/o conductas verbales o físicas de naturaleza sexual que a los ojos de una persona razonable, crean una atmósfera ofensiva y hostil en el trabajo, que afecta el salario, beneficios o interfiera con el rendimiento cumplimiento del trabajo del individuo.

Además, arguyó que no respondía vicariamente toda vez que las actuaciones alegadas no se realizaron con el propósito de servir y proteger los intereses de la compañía, ni las mismas se encontraban entre las funciones del camarógrafo Moisés Vélez.

Celebrada la vista en su fondo quedó demostrado lo siguiente:

Es nuestra política que todo el personal trabaje en una atmósfera libre de discriminación y hostigamiento ilícito. En conformidad, LIN Television Corporation, hace énfasis en que no permitirá a empleados (o vendedores o personas no empleados que tengan alguna razón para estar en los predios de la compañía tengan trato con nuestros empleados) enfrascarse en prácticas ilícita y discriminatorias, incluyendo hostigamiento sexual u hostigamiento basado en raza, color, religión, origen nacional, linaje de antepasado, edad, incapacidad u alguna otra característica protegida por ley. Cualquier forma de hostigamiento ilícito está estrictamente prohibida y no será tolerada.

LIN Television Corporation, escuchará toda querella razonable, la investigará con premura, observando confidencialidad y si es apropiado, le impondrá al empleado ofensor sanciones dirigidas al cese de la conducta ofensiva. Las sanciones impuestas por una reclamación fundamentada de hostigamiento sexual u otra forma de hostigamiento impermisible, dependerá de los hechos y circunstancias del incidente. Primeras ofensas menores podrán conducir a una reprimenda escrita y/o una suspensión sin paga. Ofensas repetidas o mayores podrán resultar en despido del ofensor.

Si usted cree que su querella de hostigamiento no ha sido tratada de una forma satisfactoria o si la acción tomada por los representantes de LIN Television Corporation, no ha logrado poner fin a la conducta de hostigamiento, por favor, llame rápidamente o acuda a una de las personas antes mencionadas, o al asesor legal de LIN Television Corporation, y exponga los detalles específicos de su queja por escrito.

El 27 de abril de 2001, la señora Hernández recibió la encomienda de entrevistar al Sr. Oscar Solo en la residencia de éste en Bayamón. Para que la asistiera, Televicentro asignó a su empleado, el camarógrafo Moisés Vélez. Vélez habría de grabar la entrevista. Televicentro también le proveyó a la señora Hernández uno de sus vehículos para trasladarse a Bayamón junto al señor Vélez.

Mientras ambos se dirigían en el vehículo a la residencia del señor Solo, el señor Vélez le explicó a la señora Hernández que no podía saludarla cuando estaban en el canal porque los muchachos se burlaban de él, a lo que la peticionaria le contestó que él podía saludarla si quería. Asimismo, el señor Vélez le indicó a la demandante que tenía la piel muy blanca por lo que necesitaba tomar sol.

Al llegar al lugar donde se realizaría la entrevista y mientras subían en el elevador, la peticionaria sintió que el señor Vélez le rozó sus glúteos con la cámara de batería que portaba, propiedad de Televicentro. Como había espacio suficiente en el ascensor para las tres personas que se encontraban en el mismo, la señora Hernández se alejó un poco de Vélez. Una vez llegaron al apartamento del entrevistado y prestos a entrar al mismo Hernández sintió nuevamente un roce con la cámara, esta vez en la espalda. En esta ocasión, la señora Hernández le manifestó tajantemente al camarógrafo que cesara su conducta.

Finalizada la grabación y de regreso a Televicentro, Vélez comenzó a conducir por una ruta distinta a la conocida por la peticionaria. Debido a ello, y a que se sentía mareada, la señora Hernández pidió que regresaran inmediatamente al canal de televisión. El señor Vélez le indicó que estaba muy pálida y, acto seguido, comenzó a hacer sonidos jadeantes con la boca, simulando como si estuviera succionando algo. Cuando la peticionaria lo miró éste se lamía los labios. Entonces, la señora Hernández le preguntó qué le pasaba, a lo que él respondió que ella le gustaba. En ese momento, la peticionaria reiteró su deseo de regresar a Televicentro. No obstante, el camarógrafo continuó haciendo ruidos y le dijo a la peticionaria que "hacía tiempo que no tenía buen sexo." Véase apéndice del recurso de *certiorari*, págs. 28-29.

Ante lo ocurrido, la señora Hernández comenzó a insultar a su acompañante, tomó su abrigo y se acercó a la ventana de la puerta. El señor Vélez le manifestó que debía calmarse, más que no se preocupara puesto que el vehículo tenía tintes y no se veía para adentro. Posteriormente, cuando miró al señor Vélez, se percató que éste mostraba el órgano sexual masculino fuera del pantalón. Entonces la señora Hernández insistió en regresar a Televicentro. Al llegar a la estación de televisión, el señor Vélez le expresó a Hernández: "que ésto quede entre nosotros." Véase apéndice del recurso de *certiorari*, pág. 29.

Enterado de dicho incidente, el jefe directo de la peticionaria, el Sr. Antulio Santarrosa, le informó lo acontecido al Sr. José E. Ramos, Presidente de Televicentro, y este último a su vez se comunicó con la Sra. Norma Cruzado, Directora de Recursos Humanos de Televicentro.

La señora Cruzado procedió entonces a entrevistar a la peticionaria.[14] La señora Hernández solicitó no trabajar más con el señor Vélez. A raíz de lo anterior, Cruzado se comunicó por vía telefónica con el supervisor del señor Vélez y le dio instrucciones a los efectos de que la peticionaria no podía trabajar junto a éste. Por otro lado, ese mismo día en la tarde, la señora Cruzado entrevistó al Sr. Moisés Vélez. A preguntas de Cruzado sobre lo ocurrido con la peticionaria, Vélez bajó la cabeza, se encontraba nervioso, y dijo: "cometí un error y lo siento."

Una vez conocidas ambas versiones, la señora Cruzado recomendó al señor Ramos que se suspendiera tanto al señor Vélez como a la señora Hernández, ello a pesar de que ésta no era empleada de Televicentro. El señor Ramos sin embargo, impartió instrucciones de enviar a Vélez una carta con una advertencia de que sería despedido si ocurriese

---

[14] La señora Cruzado adujo que, inicialmente, no creyó lo narrado por la señora Hernández debido a que ésta última se mostró muy tranquila durante la entrevista; no obstante, recomendó posteriormente la suspensión del Sr. Moisés Vélez.

otro incidente parecido.   El 7 de mayo de 2001 se le entregó a Vélez la misiva en la que se indicó lo siguiente:

> En dicha reunión, **usted [Sr. Moisés Vélez] aceptó su error en el incidente de carácter sexual que ocurriera entre usted y Mara Hernández [peticionaria]**, empleada del programa Super Exclusivo.
>
> En la misma, se hizo referencia a **otro caso en el cual usted también estuvo involucrado**, pero esa vez, con una empleada de Televicentro.  Además, se le enfatizó que de usted incurrir en otra (sic) incidente de esta índole, la Compañía se verá en la obligación de tener que cesantearlo permanentemente de su empleo.
>
> Le recordamos que es política de la compañía mantener un ambiente libre de todas las formas de intimidación y hostigamiento; por lo tanto, no se tolerará conducta inapropiada de parte de ninguno de sus empleados, ni de personas relacionadas a Televicentro.

Es de notar que en la carta se reconoció que con anterioridad había ocurrido un incidente similar entre el señor Vélez y una empleada de Televicentro.[15]  En aquella ocasión, aproximadamente siete meses antes del que dio lugar a la demanda de epígrafe, Vélez había intentado besar en la boca a una maquillista de la estación.  Fue el propio Vélez quien, temeroso de ser acusado de hostigamiento sexual por la empleada, acudió ante la señora Cruzado a reportar lo sucedido indicando que "había entrado a maquillaje a dar un beso como de costumbre" y que "había tropezado" y la maquillista "pensó que él le iba a dar un beso en la boca."   Sentencia del Tribunal de Primera

---

[15] La Opinión mayoritaria cuestiona que este incidente realmente haya ocurrido, a pesar de que Televicentro de Puerto Rico, en la carta de reprimenda enviada al señor Vélez reconociera que en efecto ocurrió un incidente anterior con una empleada de la estación televisiva.

Instancia, determinación de hecho número 46, apéndice del recurso de *certiorari,* pág. 32. Según se desprende de la sentencia de instancia, Televicentro **le requirió verbalmente** al camarógrafo que evitara "el contacto y los besos con las empleadas", con lo que el señor Vélez estuvo de acuerdo. *Loc. cit.*

Subsiguientemente, Televicentro le impuso a la demandante la restricción de no proveerle transportación para las entrevistas que hacía fuera del canal, por lo que la señora Hernández tenía que proveerse su propia transportación.

A la luz de los hechos probados, el Tribunal de Primera Instancia, en una extensa y ponderada sentencia, resolvió que el señor Vélez, en efecto, había realizado avances sexuales no deseados hacia la señora Hernández. Indicó que ello creó un ambiente hostil, intimidante y humillante, por lo que declaró con lugar la demanda en su contra y le condenó a pagar una cantidad ascendente a $50,000.00, más las costas del litigio. El foro primario concluyó también que antes de ocurrir los hechos de este caso, el señor Vélez "ya había tenido un incidente de carácter sexual con una maquillista." Apéndice del recurso de certiorari, pág. 50.

Con relación a Televicentro, el tribunal de instancia concluyó que éste era solidariamente responsable junto al señor Vélez, conforme su propia negligencia bajo el Art. 1802. El foro primario concluyó que Televicentro fue

negligente por su "falta de cuidado, en no anticipar las consecuencias probables de un acto o una omisión, o sea la falta de previsibilidad."[16]   El tribunal resolvió que el deber de previsibilidad del patrono no se limitaba a corregir situaciones pasadas de hostigamiento sexual sino a prevenir que ocurrieran en el futuro.   En este caso, Televicentro, aun cuando tenía establecido una política de no tolerancia al hostigamiento sexual en el empleo al igual que sanciones establecidas por violar dicha norma, no le impuso ninguna sanción al señor Vélez por el primer incidente, más allá de una mera advertencia verbal y en el caso de autos, sólo le envió una carta de amonestación.   El foro sentenciador entendió que Televicentro no empleó la diligencia de un buen padre de familia para prevenir el daño ocasionado a la señora Hernández.

El foro primario también concluyó que Televicentro respondía bajo el Art. 1803 toda vez que el señor Vélez se encontraba en funciones de su trabajo y durante sus horas laborables cuando incurrió en la conducta censurable. Indicó el tribunal que, aunque la acciones de Vélez fueron contrarias a la política de Televicentro, las mismas fueron incidental al trabajo que realizaba en ese momento el cual beneficiaba a Televicentro.

Inconforme con la determinación anterior, Televicentro recurrió al Tribunal de Apelaciones.   Dicho foro modificó

---

[16] Véase Sentencia del Tribunal de Primera Instancia de 28 de octubre de 2003, apéndice del recurso de *certiorari*, pág. 49.

la sentencia apelada al confirmar la responsabilidad del camarógrafo Vélez, pero desestimar la reclamación contra Televicentro. El Tribunal de Apelaciones concluyó que Televicentro no era responsable vicariamente por los actos cometidos por su empleado ya que los acercamientos sexuales del señor Vélez en nada se relacionaban con sus funciones de camarógrafo, ni con la tarea encomendada de grabar la entrevista.[17] Al así concluir, el tribunal *a quo* determinó que era innecesario discutir si Televicentro era responsable bajo el Artículo 1802 por no haber previsto los daños ocurridos.

En desacuerdo, la demandante acudió ante nosotros y levantó como errores los siguientes:

> Erró el Honorable Tribunal de Apelaciones al revocar la determinación del Tribunal de Instancia imponiendo responsabilidad a Televicentro toda vez que ésta no cumplió con su obligación de prever que los hechos negligentes realizados por su empleado el co-demandado Vélez ocurrieran[...]

> Cometió error de derecho el Honorable Tribunal de Apelaciones al intervenir con las determinaciones de hechos que hiciera el Honorable Tribunal de Primera Instancia al evaluar la prueba testifical presentada en el juicio sin que haya demostrado pasión o prejuicio (sic).

---

[17] A tales efectos, el Tribunal de Apelaciones expresó que los "actos delictivos cometidos por el codemandado Vélez respondían exclusivamente a motivaciones personales del codemandado, a su carácter depravado, y esa conducta sexual nada tenía que ver con sus funciones como camarógrafo, ni promovían los intereses de Televicentro, por lo que tales actuaciones no podían ser atribuibles a Televicentro bajo la doctrina de responsabilidad vicaria". Véase Sentencia del Tribunal de Apelaciones de 31 de enero de 2005, apéndice del recurso de *certiorari*, pág. 18.

El 20 de mayo de 2005 expedimos el recurso de *certiorari* presentado. Contando con el beneficio de la comparecencia de ambas partes y los autos del presente caso, y estando en posición de resolver, este Tribunal confirma, desafortunadamente, el dictamen del foro apelativo intermedio.

**II**

Es norma de conducta que gobierna la convivencia humana aquélla que postula el no causar daño a los demás. Quién incumple con la misma responde por el daño causado. Es decir, está sujeto a responsabilidad la que a su vez se traduce en la obligación de indemnizar o reparar los perjuicios causados a la víctima. La doctrina reconoce --a grandes rasgos-- dos grupos o categorías de actos dañosos: aquellos que surgen del incumplimiento de lo pactado y "los que se producen en el desarrollo de cualesquiera actividades humanas, pero al margen de toda relación jurídica previa entre dañador y víctima." R. De Ángel Yágüez, *La Responsabilidad Civil*, Universidad de Deusto, Bilbao, 1988, pág. 24. En esta ocasión nos concierne precisamente esta última, la cual aparece regulada, entre otros, en los Arts. 1802 y 1803 del Código Civil. Nos toca resolver entonces, si a la luz de los hechos transcritos anteriormente se configura una causa de acción contra Televicentro de Puerto Rico, ya bien bajo el Artículo 1802 o el 1803 del Código Civil.

Como en tantas otras ocasiones hemos indicado, para que prospere una reclamación al amparo del Art. 1802 se requiere que se lleve a cabo una actuación u **omisión** culposa o negligente; que se ocasione un daño y que exista una relación causal entre la acción y omisión y el daño ocasionado. *Valle Izquierdo v. E.L.A.*, res. 14 de mayo de 2002, 157 D.P.R. \_\_\_\_, 2002 T.S.P.R. 64; *Elba A.B.M. v. U.P.R.*, 125 D.P.R. 294, 308 (1990); *Hernández v. Fournier*, 81 D.P.R. 93, 96 (1957).

En casos en que se alegue que el daño infligido es el resultado de **una omisión**, además de los requisitos antes mencionados, para que se configure una causa de acción se requiere:  primero, demostrar la existencia de un deber jurídico de actuar de parte del alegado causante del daño y el incumplimiento de éste con ese deber; y, segundo, si de haberse realizado el acto omitido se hubiere evitado el daño. *Soc. de Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 106 (1986) Véase, *Santiago Colón v. Supermercado Grande,* res. 24 de enero de 2006, 166 D.P.R. \_\_\_, 2006 T.S.P.R. 12; *Bacó v. A.N.R. Construction*, res, 23 de septiembre de 2004, 162 D.P.R. \_\_\_, 2004 T.S.P.R. 154; *Elba A.B.M. v. U.P.R., ante*. Véase además, Castán Tobeñas, *Derecho español, común y foral,* Ed. Reus, Madrid, 1993, Vol. 4, 15ta ed., pág. 942, nota 1; Puig Brutau, *Fundamentos de Derecho civil,* Ed. Bosch, 1984, Tomo II, vol. 3, pág. 80.

La existencia de un "deber jurídico de actuar" es presupuesto indispensable para que se configure la causa de acción por omisión. "[H]ay que entender que todos los posibles comportamientos omisivos que se hayan producido en el universo mundo, no pueden entrar en juego como factores determinantes de una daño indemnizable." L. Díez Picazo, *Derecho de Daños*, Ed. Civitas, Madrid, 1999, pág. 288. De ahí que Díez Picazo postule, con acierto, que la omisión sólo será fuente de responsabilidad "si existe un especial **deber legal** o negocial de obrar . . . ." (Énfasis nuestro.) *Íbid*, pág. 290. En otras palabras, da lugar a la indemnización de daños cuando "exista por virtud de la ley o un negocio jurídico el deber de practicar el acto omitido." *Íb.*, pág. 289. Véase *Elba A.B.M., supra,* pág. 308; *Santiago Colón, supra*. Por lo tanto, si existe una disposición legal que tenga por objeto la protección de otra persona, quien esté llamado a brindar tal protección, tiene un deber afirmativo de actuar y si lo incumple y como resultado de ello ocurre un daño, tendrá la obligación de reparar el mismo.

De otra parte, es menester señalar que en toda reclamación instada bajo el Art. 1802, el factor de la previsibilidad es un elemento esencial. *Pons Anca v. Engebretson*, res. 30 de septiembre de 2003, 160 D.P.R. ____, 2003 T.S.P.R. 150; *Elba A.B.M., supra*, pág. 309; *Baralt v. E.L.A.*, 83 D.P.R. 277 (1961). El grado de previsibilidad requerido en cada caso ha de variar en

función al estándar de conducta que aplique. El deber de cuidado del empresario incluye tanto la obligación de anticipar el daño, así como la de evitar que éste ocurra, cuando la probabilidad de su ocurrencia es razonablemente previsible. *Pons Anca v. Engebretson*, *supra*. Para determinar si el resultado era razonablemente previsible es preciso acudir a la figura de la mujer o el hombre prudente y razonable, que es aquélla que actúa con el grado de cuidado, diligencia, vigilancia y precaución exigido por las circunstancias. *Monllor Arbola v. Sociedad de Gananciales*, 138 D.P.R. 600, 604 (1995).

Así también, para que exista responsabilidad por un daño causado por la negligencia de otro es necesario que entre ésta y aquél exista una relación causal; y, para que exista esta relación causal es necesario que el daño ocasionado haya sido previsible y evitable, de haberse realizado a tiempo la acción omitida. *Montalvo Feliciano v. Cruz Concepción*, 144 D.P.R. 748, 759 (1998) y casos allí citados. "Un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirando retroactivamente el acto que se alega ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto." *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 474 (1997).

Luego de establecido el marco doctrinal, apliquemos el mismo a los hechos del caso de auto.

### III

Indicamos anteriormente que **la existencia de un deber jurídico de actuar** es presupuesto imprescindible a la hora de imponer responsabilidad en daños por la omisión de actuar. **El reconocimiento de la existencia de tal deber, es esencialmente un asunto de lo justo y refleja los estándares contemporáneos de conductas aceptables para la sociedad abierta, democrática y pluralista en que vivimos.** El deber así reconocido por lo tanto, constituye una expresión social de qué comportamiento es contrario a los valores que estimamos apreciables, por lo que se justifica que el quebrantamiento de esa política social genere responsabilidad civil extracontractual. **"El Derecho representa no sólo lucha contra la injusticia, sino también por más justicia. De allí que bienes e intereses valiosos deben protegerse jurídicamente antes de todo daño."** (Énfasis nuestro.) M. Zavala de González, *Actuaciones por daños*, Ed. Hammurabi, Buenos Aires, 2004, pág. 239.

No hay duda que nuestra sociedad, aunque lentamente, ha ido reconociendo los efectos perniciosos del hostigamiento sexual, muy en particular en el taller de empleo. Después de todo, el acoso sexual tiene un efecto perturbador no solo emocionalmente para la persona afectada, sino también para su rendimiento y satisfacción con el trabajo. El hostigamiento sexual es, ante todo, una de las manifestaciones típicas de la violencia de género, reflejo de discrimen y de desigualdad.

Aquellos comportamientos que en el pasado eran aceptables como por ejemplo, las bromas, alusiones, comentarios o insinuaciones de carácter sexual hechas en el taller de empleo, ya no lo son.  A medida que ello ha ido ocurriendo, observamos una progresiva traslación de ámbitos que se entendían propios de lo privado a la esfera pública, con la consecuente imposición de obligaciones legales de carácter imperativo dirigidas a desterrar el hostigamiento sexual del entorno de trabajo.  "El hostigamiento sexual es un problema real y su impacto es devastador no sólo en aquellos aspectos relacionados directamente con la víctima misma sino también con el patrono y con la sociedad."  R. Ortega-Vélez, *Hostigamiento sexual en el empleo*, Ediciones Scisco, San Juan, 1998, pág. 5.  Véase además, M.C. Díaz Descalzo, "El acoso sexual en el trabajo", en E. Ruiz Pérez (coordinadora), *Mujer y Trabajo*, Ed. Bimarzo, España, 2003, págs. 179-203.

Nadie pone en duda que en Puerto Rico existe una clara política pública que proscribe el hostigamiento sexual en el lugar de empleo.  De ahí que la Asamblea Legislativa aprobara la Ley de Hostigamiento Sexual en el Empleo, Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. secs. 155 *et seq*.  Al enunciar esa política pública se indicó que "el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional

establecido de que la dignidad del ser humano es inviolable." 29 L.P.R.A. sec. 155.

La Ley de Hostigamiento Sexual en el Empleo le impone al patrono la obligación afirmativa de velar por **la prevención, prohibición y erradicación del hostigamiento sexual en el empleo; así como también le impone el deber de tomar acciones inmediatas y apropiadas para corregir cualquier situación de esta índole que se le presente.** *Delgado Zayas v. Hosp. Interamericano*, 137 D.P.R. 643, 652 (1994). Así, la ley le impone al patrono la responsabilidad de velar porque el taller de trabajo sea seguro erradicando toda conducta constitutiva de hostigamiento sexual. [18]

Es incuestionable entonces, que Televicentro tiene el deber de prevenir, prohibir y erradicar el hostigamiento sexual en su entorno. De ahí, que en cumplimiento de esa obligación en ley, ésta circulara un memorando a todos sus empleados reiterando su compromiso de mantener un ambiente

---

[18] La Ley Núm. 17 de 22 de abril de 1988 ("Ley Núm. 17"), 29 L.P.R.A. secs. 155 *et seq.*, sólo reconoce una causa de acción cuando el hostigamiento se da entre empleados y cuando un tercero, bajo el control del patrono, hostiga a un empleado, por lo cual no cabe hablar en este caso de que se configuró una violación a la Ley Núm. 17. 29 L.P.R.A. secs. 155, e, f.

Ahora bien, ello no significa que toda referencia a dicha ley sea innecesaria o desatinada como parece sostener la Opinión del Tribunal. **La referencia a dicha ley obedece a que la misma ejemplifica diáfanamente, la sabia política pública que prevalece en nuestro ordenamiento y que proscribe el acoso sexual; y como tal, impone un deber de conducta más allá del estatutario, a todo patrono.** Deber que conlleva la no tolerancia de todo acto que suponga acercamientos sexuales no deseados, de cualquier índole. Máxime cuando existen normas escritas del patrono, informadas a los empleados, proscribiendo el acoso sexual.

libre de todas las formas de intimidación y hostigamiento, incluyendo el hostigamiento sexual. En este abarcador documento se definió el hostigamiento sexual como cualquier acercamiento sexual no deseado, solicitud de favores sexuales y/o conductas verbales o físicas de naturaleza sexual que a los ojos de una persona razonable crean una atmósfera ofensiva y hostil en el trabajo. Las sanciones dispuestas en el memorando consistían en reprimenda escrita y/o suspensión sin paga en casos de primeras ofensas y, si las actuaciones eran repetidas o mayores, el empleado podría ser despedido.

Ahora bien, a pesar de la clara política de la compañía de prohibir el hostigamiento sexual, ésta omitió actuar de una forma razonable para prevenir o evitar el daño que causara su empleado a la peticionaria. No es suficiente para descargar la obligación de mantener un taller de trabajo donde no prive el hostigamiento sexual, protegiendo así al empleado y a todo el que viene en contacto con éste, la mera formulación de preceptos reglamentarios si se hace caso omiso a los mismos y a las directrices que se imparten.

Cabe recordar que en este caso, luego de que el camarógrafo de Televicentro incurriera en conducta violatoria de la política pública establecida por la propia entidad al intentar besar a una maquillista de la compañía, ésta última meramente se limitó a indicarle verbalmente que

no lo hiciera más y que debía evitar todo contacto con las empleadas de la estación en un futuro.[19]

La actitud de Televicentro se revela poco eficaz para atajar una conducta que a todas luces era contraria a la política de la compañía respecto el hostigamiento sexual. Ésta omitió actuar de una forma razonable para prevenir o evitar en el futuro este tipo de actuación; fue más lo que dejó de hacer que lo que hizo. Adviértase, que en el memorando circulado por la estación televisiva sobre el hostigamiento sexual, se indicaba tajantemente que "cualquier forma de hostigamiento ilícito no será tolerada." Establecía dicho memorando que la primera

---

[19] Aquí la posición asumida por los miembros de la mayoría nos parece muy desafortunada. La Opinión minusvalora el incidente anterior al destacar que la maquillista nunca se querelló de lo ocurrido. Parecería entonces sostener que la conducta reiterada de un empleado no puede ser considerada a la hora de fijar responsabilidad si no ha habido una querella formal previa en su contra, aunque el patrono sepa de la conducta como en efecto, sucedió en este caso. No podemos avalar tal interpretación.

Por otro lado, los miembros de la mayoría obvian las siguientes determinaciones de hecho del tribunal de instancia, que ya señalamos, a saber: que luego del incidente con la maquillista, Televicentro le indicó verbalmente al señor Vélez que "evitara el contacto y los besos con las empleadas"; que éste a su vez "acató" la directriz; y que la propia estación hizo referencia al incidente anterior al tomar medidas disciplinarias contra Vélez luego del incidente con la señora Hernández Vélez. En cuanto a esto último, la pregunta forzada es por qué Televicentro iba a admitir la ocurrencia de un incidente que catalogó de carácter sexual, si ello no hubiera ocurrido.

En última instancia, la Opinión mayoritaria sustituye el criterio de la jueza de instancia que vio y escuchó los testigos, adjudicó credibilidad y fijó responsabilidades luego de aquilatar la prueba desfilada, por el propio. Ésta concluyó que el señor Vélez estuvo involucrado en "un incidente de carácter sexual con una maquillista" y no había sido sancionado por ello.

ofensa podía dar margen a **una reprimenda escrita e inclusive una suspensión sin paga. Más sin embargo, confrontada con una violación a sus normas Televicentro se limitó a indicarle al ofensor verbalmente que no podía volver a incurrir en esa conducta, sin más.**

De otro lado, fue la propia estación la que asignó al camarógrafo Vélez a trabajar con la peticionaria a pesar que se le había indicado a Vélez que debía evitar todo contacto con las empleadas de la estación. Si bien es cierto que la peticionaria no era propiamente empleada de Televicentro, no es menos cierto que el trabajo de ésta redundaba en beneficio para Televicentro y que era la práctica de la estación ofrecer sus camarógrafos a J & K Enterprises para grabar los segmentos de este programa. Este curso de acción se nos presenta poco previsor desde la perspectiva de la persona prudente y razonable que actúa con el cuidado, la diligencia y la precaución requerida para evitar actuaciones como las que ocurrieron entre Vélez y la peticionaria.

Hemos indicado que es deber de todo patrono no tan sólo anticipar el daño, sino también evitar que éste ocurra cuando es razonablemente previsible la ocurrencia del mismo.[20] **Sobre el empresario recae el deber de vigilar que**

---

[20] Aquí nuevamente diferimos del criterio mayoritario. El Tribunal sostiene que, aun asumiendo que Televicentro hubiese sancionado al señor Vélez luego del incidente con la maquillista, ello no hubiera evitado el incidente posterior. Indica el Tribunal: "Asumiendo, nuevamente a los fines de la argumentación, que Televicentro hubiera emitido una reprimenda respecto a Vélez y/o incluso, lo

**las circunstancias en que se realice el trabajo no mengüen la dignidad humana y la intimidad del trabajador. El empleador tiene que velar porque en el trabajo se respeten estos derechos, los que son en última instancia, principios esenciales de sana convivencia y respeto mutuo.**

De esta suerte, todo patrono tiene la obligación o el deber, de asegurar un ambiente de trabajo seguro donde no se tolere el hostigamiento sexual en cualquiera de sus manifestaciones en protección de sus empleados y de los que advienen en contacto con éstos. Para ello se requiere tomar las medidas afirmativas necesarias y apropiadas para evitar y erradicar este tipo de actuación en el taller de empleo y proteger así a las personas que allí laboran. **Este deber de proteger contra el hostigamiento sexual surge por virtud de ley así como también porque ése es el estándar de conducta exigible en una sociedad como la nuestra donde la dignidad y la honra del ser humano son valores preciados.**

---

hubiere suspendido: ¿dicha acción disciplinaria hubiera evitado la ocurrencia del incidente con la demandante Hernández Vélez? La contestación en la negativa es mandataria; su conducta criminal era totalmente imprevisible." (Énfasis en original). Opinión, pág. 21.

Cabe destacar que en este caso no se dilucida controversia alguna de naturaleza "criminal". Se trata de determinar la responsabilidad civil que pueda recaer sobre un patrono por sus propias acciones u omisiones, advertido como fue, de que un empleado ha quebrantado las normas de conducta aceptables en el taller de empleo. Pero más importante, nos tenemos que preguntar si la consecuencia de lo que sostiene la mayoría es que las sanciones a los empleados en casos de hostigamiento sexual son innecesarias pues no hay certeza que tendrían efecto disuasivo alguno. Parece evidente que no podemos compartir tal criterio.

Somos del criterio que en el caso de epígrafe Televicentro, advertida de la conducta del camarógrafo Vélez con una de las maquillistas de la estación, omitió tomar las diligencias exigibles para prevenir ese tipo de actuación en un futuro; como resultado de tal omisión, era previsible que acaeciesen eventos como el que dio margen a la reclamación de epígrafe. En vista de ello, Televicentro responde por sus propias omisiones, es decir por su propia negligencia.[21]    *Cf., Martínez Gómez v. Chase Manhattan Bank*, 108 D.P.R. 515 (1979).

Por los fundamentos antes expuestos, entiendo procedía revocar la sentencia del Tribunal de Apelaciones donde se eximía de responsabilidad a Televicentro de Puerto Rico. Soy de opinión que Televicentro responde frente a la peticionaria por sus propias omisiones negligentes en virtud del Art. 1802 del Código Civil, lamentablemente una mayoría de los miembros de este Tribunal entiende lo contrario.

Anabelle Rodríguez Rodríguez
Juez Asociada

---

[21] Sorprende por demás que, advertida Televicentro de las acciones de Vélez en este caso, y con una recomendación de la Directora de Recursos Humanos de que éste fuera suspendido de empleo habida cuenta de su historial, el patrono optara por meramente enviar una carta de reprimenda. Esta actitud relajada de parte del patrono poco abona a adelantar la política de cero tolerancia al hostigamiento sexual en el empleo que éste pregona.